# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 10, 2005          Decided February 17, 2006

Reissued June 7, 2006

No. 04-5395

MENACHEM BINYAMIN ZIVOTOFSKY, BY HIS PARENTS AND
GUARDIANS, ARI Z. AND NAOMI SIEGMAN ZIVOTOFSKY,
APPELLANT

v.

SECRETARY OF STATE,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cv01921)

---

*Nathan Lewin* argued the cause for appellant.  With him on
the briefs was *Alyza D. Lewin.*

*Steven Lieberman* was on the brief for *amici curiae*
American Association of Jewish Lawyers and Jurists, et al. in
support of appellant.

*Paul Kujawsky* was on the brief for *amici curiae*
Congressmembers Henry A. Waxman, et al.

*Douglas N. Letter*, Litigation Counsel, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, *Gregory G. Katsas*, Deputy Assistant Attorney General, and *Lewis Yelin*, Attorney.

Before: SENTELLE, RANDOLPH, and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: Menachem Binyamin Zivotofsky was born in Jerusalem on October 17, 2002. As a child of U.S. citizens who have resided in the United States, he also is a U.S. citizen. 8 U.S.C. § 1401(c). The ultimate issue in this appeal is whether § 214(d) of the Foreign Relations Authorization Act, Fiscal Year 2003, Pub. L. No. 107-228, 116 Stat. 1350, 1365-66 (2002) ("Authorization Act"), entitles Menachem to have "Israel" listed on his U.S. passport as his place of birth. The district court did not reach the issue. It dismissed the complaint for lack of standing and because it believed the case presented a political question it could not resolve.

I.

The complaint alleges that Menachem's mother visited the Embassy of the United States in Tel Aviv, Israel ("Embassy"), on December 24, 2002, to request that her son be registered as a U.S. citizen and issued a passport and Consular Report of Birth Abroad with his place of birth designated as "Jerusalem, Israel." A Consular Birth Report is "a formal document certifying the acquisition of U.S. citizenship at birth of a person born abroad." 7 U.S. DEPARTMENT OF STATE, FOREIGN AFFAIRS MANUAL ("FAM") § 1441(a). Embassy officials denied Mrs.

Zivotofsky's request. According to her declaration, they told her that although "the issue ha[d] been debated in Congress it ha[d] not become law." The Embassy issued a passport listing Menachem's place of birth as "Jerusalem" and a Consular Birth Report designating his birthplace as "Jerusalem." Neither document lists a country of birth.

A few months before Mrs. Zivotofsky visited the Embassy, the President signed the Authorization Act into law. Section 214 is titled "United States policy with respect to Jerusalem as the capital of Israel." Subsection (a) "urges the President" to relocate the U.S. Embassy in Israel to Jerusalem. Subsections (b) and (c) concern the use of appropriated funds. Subsection (d), which is the focus of this appeal, provides:

> For purposes of the registration of birth, certification of nationality, or issuance of a passport of a United States citizen born in the city of Jerusalem, the Secretary shall, upon the request of the citizen or the citizen's legal guardian, record the place of birth as Israel.

Authorization Act § 214(d).[1]

---

[1] The complaint sought an injunction requiring the Secretary of State to issue Menachem a passport and Consular Birth Report with "Jerusalem, Israel" recorded as his place of birth. Plaintiff's counsel came to realize that § 214(d) speaks only in terms of "Israel." In his memorandum in support of summary judgment in the district court and in his briefs and oral argument on appeal, he sought only the designation "Israel." The government also treats the case as raising the question whether § 214(d) entitles Menachem to that relief, and the government has no objection to our doing the same.

4

When the President signed the Authorization Act into law, he made the following statement regarding § 214:

> Section 214, concerning Jerusalem, impermissibly interferes with the President's constitutional authority to conduct the Nation's foreign affairs and to supervise the unitary executive branch. Moreover, the purported direction in section 214 would, if construed as mandatory rather than advisory, impermissibly interfere with the President's constitutional authority to formulate the position of the United States, speak for the Nation in international affairs, and determine the terms on which recognition is given to foreign states. U.S. policy regarding Jerusalem has not changed.

Statement by President George W. Bush Upon Signing H.R. 1646, 2002 U.S.C.C.A.N. 931, 932 (Sept. 30, 2002). The status of Jerusalem is, as a matter of U.S. policy, "a matter to be resolved by negotiation between the Israelis and Palestinians" in light of their competing claims of sovereignty over the city. Br. for Appellee 7.

Section 214 of the Authorization Act conflicts with instructions in the State Department's Foreign Affairs Manual. As a "general rule," consular officers must "enter the country of the applicant's birth in the passport." 7 FAM § 1383.1(a). It is the State Department's "policy [to] show[] the birthplace as the country having present sovereignty." *Id.* § 1383.5-4 (Palestine); *see also id.* § 1383.5-5 (Israel-Occupied Areas). But when "the birthplace of the applicant is located in territory disputed by another country, the city or area of birth may be written in the passport." *Id.* § 1383.5-2 (Disputed Territory). The Manual generally gives U.S. citizens born abroad the option of listing the city of birth "when there are objections to the country listing shown on the [Department's] birthplace guide." *Id.* § 1383.6(a)

(City of Birth Listing).  For applicants wishing to exercise this option, the Manual requires consular officers to inform them of the "difficulties which they may encounter in traveling to, or obtaining visas for entry into, certain foreign countries."  *Id.* § 1383.6(b).[2]

The Manual has special rules regarding Israel and the occupied territories.  For example, if a passport applicant was "born [before 1948] in the area formerly known as Palestine," the passport may "show Palestine as the birthplace in individual cases upon consideration of all the circumstances"; if the applicant was born in 1948 or thereafter, "the city or town of birth may be listed if the applicant objects to showing the country having present sovereignty." *Id.* § 1383.5-4.  The same is true of "Israel-Occupied Areas," such as the Golan Heights, the West Bank, and the Gaza Strip.  *See id.* § 1383.5-5.  With regard to Jerusalem, the Manual differentiates between applicants born before and after the existence of an official Israeli state.  *See id.* §  1383.5-6 (Jerusalem).  For those like Menachem – a citizen born in Jerusalem after May 14, 1948 – the Manual requires the person's place of birth to be recorded as "JERUSALEM."  *See id.* § 1383.1(b) (requiring compliance with the "birthplace transcription guide" when "entering the place of birth in the passport"); *id.* § 1383 Ex. 1383.1, Pt. II (Birthplace Transcription Guide for Use in Preparing Passports) (JERUSALEM) (citing *id.* §§ 1383.5-5, .5-6); *see also id.* (ISRAEL) (indicating that Israel "[d]oes not include Jerusalem") (citing *id.* § 1383.5-5).

---

[2] We will assume, as the parties do, that the State Department's policies regarding place of birth transcription on Consular Birth Reports are the same as they are for passports. *See* 7 FAM § 1445.5-1 (Children Previously Documented as U.S. Citizens).

6

II.

As to Menachem's standing to bring this action, the government argues that he cannot satisfy the injury-in-fact requirement derived from Article III of the Constitution. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). He is now only three years old. The claim that someday, when he is older, he might suffer psychological harm from the Secretary's passport decision is, the government argues, purely conjectural and in any event not an imminent injury, as the law requires.[3] However that may be, we think he has suffered another sort of injury in fact and therefore has standing.

The Supreme Court has recognized that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973). Or stated differently, "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin*, 422 U.S. 490, 514 (1975); *see Lujan*, 504 U.S. at 578.

A common example of such a statute is the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Anyone whose request for specific information has been denied has standing to bring an action; the requester's circumstances – why he wants the information, what he plans to do with it, what harm he

---

[3] Menachem did not claim that he was experiencing "difficulties . . . in traveling to, or obtaining visas for entry into, certain foreign countries" because his passport indicates his city of birth. 7 FAM § 1383.6(b).

suffered from the failure to disclose – are irrelevant to his standing. *See, e.g.*, *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989). The requester is injured-in-fact for standing purposes because he did not get what the statute entitled him to receive. *See FEC v. Akins*, 524 U.S. 11, 23-25 (1998); *id.* at 30-31 (Scalia, J., dissenting); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. at 449; *Pub. Citizen v. FTC*, 869 F.2d 1541, 1548 n.13 (D.C. Cir. 1989); *Rushforth v. Council of Econ. Advisers*, 762 F.2d 1038, 1039 n.3 (D.C. Cir. 1985); *Brandon v. Eckard*, 569 F.2d 683, 687-88 (D.C. Cir. 1977). The same injury can give a plaintiff standing to enforce the Government in the Sunshine Act, 5 U.S.C. § 552b, *see Rushforth*, 762 F.2d at 1039 n.3, and the Federal Advisory Committee Act, 5 U.S.C. app. 2 §§ 1-16, *see Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. at 449.[4] Other Supreme Court statutory standing cases are similar. The "Supreme Court has expressly ruled that persons seeking to vindicate a statutory right to information have standing even if they know or should know that the untruthful information they receive is false, *see Havens Realty* [*Corp. v. Coleman*, 455 U.S. 363, 374 (1982)], and even if the information is available to them through other channels, *see* [*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 757 n.15 (1976)]." *Pub. Citizen v. FTC*, 869 F.2d 1541, 1548 n.13 (D.C. Cir. 1989).

The Supreme Court has qualified statutory standing in one respect. In *Lujan* the Court held that the citizen-suit provision of the Endangered Species Act of 1973 § 11(g), 16 U.S.C. § 1540(g), could not bestow standing on plaintiffs who claimed no "particularized" injury, but only a generalized interest shared

---

[4] For this reason, no one questioned the plaintiffs' standing in *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 219 F. Supp. 2d 20 (D.D.C. 2002), *ordered dismissed by In re Cheney*, 406 F.3d 723, 731 (D.C. Cir. 2005) (en banc).

by all citizens in the proper administration of the law. 504 U.S. at 573-74; *see also Sierra Club v. Morton*, 405 U.S. 727, 738 (1972) ("[Statutory] broadening [of] the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury."). By "particularized" the Court meant "that the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. While a person would have standing to vindicate his "individual right" created by statute, "the public interest in the proper administration of the laws . . . [cannot] be converted into an individual right by a statute that denominates it as such, and that permits all citizens (or, for that matter, a subclass of citizens who suffer no distinctive concrete harm) to sue." *Id.* at 576-77. Otherwise, the federal courts would intrude upon the President's constitutional duty to "take Care that the Laws be faithfully executed," U.S. CONST. art. II, § 3, in violation of the separation of powers. *Lujan*, 504 U.S. at 577.[5]

Menachem's case presents no such problem. When a plaintiff is the "object of [government] action (or forgone action) . . . . there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 561-62. Although it is natural to think of an injury in terms of some economic, physical, or psychological damage, a concrete and particular injury for standing purposes can also consist of the violation of an individual right conferred on a person by statute. Such an injury is concrete because it is of "a form traditionally capable

---

[5] This case would be like *Lujan* if someone born in the United States with no connection to anyone born in Jerusalem sued the State Department claiming that it was violating § 214(d) by not complying with requests of U.S. citizens born in Jerusalem to put "Israel" on their passports.

of judicial resolution," *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21 (1974), and it is particular because, as the violation of an *individual* right, it "affect[s] the plaintiff in a personal and individual way," *Lujan*, 504 U.S. at 560 n.1.

The injuries in the FOIA cases mentioned above are of this sort. *See Sargeant v. Dixon*, 130 F.3d 1067, 1070 (D.C. Cir. 1997) ("The receipt of information is a tangible benefit the denial of which constitutes an injury."). And so is Menachem's. *See Allen v. Wright*, 468 U.S. 737, 751-52 (1984) ("In many cases the standing question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases."). His allegation that Congress conferred on him an individual right to have "Israel" listed as his place of birth on his passport and on his Consular Birth Report is at the least a colorable reading of the statute. He also alleges that the Secretary of State violated that individual right. This is sufficient for Article III standing. *See Reservists Comm. to Stop the War*, 418 U.S. at 224 n.14. Menachem's injury is not "too abstract," the connection between the allegedly illegal conduct and the injury is not "too attenuated," and the prospect of his obtaining relief from a favorable ruling is not "too speculative." *Allen*, 468 U.S. at 752. Under Article III of the Constitution, the "imperatives of a dispute capable of judicial resolution are sharply presented issues in a concrete factual setting and self-interested parties vigorously advocating opposing positions." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 403 (1980). Menachem's suit satisfies each element and he therefore has standing to sue.

III.

The district court concluded that a U.S. passport inscribed "Jerusalem, Israel" might signify to others that the United States

recognized Israel's sovereignty over Jerusalem. Yet "[p]olitical recognition is exclusively a function of the Executive." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410 (1964); *see also Williams v. Suffolk Ins. Co.*, 38 U.S. (13 Pet.) 415, 420 (1839). For this reason the district court found that the case presented a political question – that is, a claim of unlawfulness that was nonjusticiable. *See Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004) (plurality opinion); *Schneider v. Kissinger*, 412 F.3d 190, 193-94 (D.C. Cir. 2005). The case, however, no longer involves the claim the district court considered. *See supra* note 1. Both sides agree that the question now is whether § 214(d) entitles Menachem to have just "Israel" listed as his place of birth on his passport and on his Consular Birth Report.

Whether this, too, presents a political question depends on the meaning of § 214(d) – is it mandatory or, as the government argues, merely advisory? And it may depend also on what the effect would be of listing "Israel" on the passports of citizens born in Jerusalem. Among other things, Menachem contends that there "are tens of thousands of American citizens today whose passports identify them as born in 'Israel,'" Br. for Appellant 20; that "no one will be able to distinguish" those born in Jerusalem "from American citizens born in Tel Aviv or Haifa" if their passports list "Israel" as their birthplace, *id.*; that "there is little foreign-policy impact in how American citizens are described in their passports," *id.* at 21; and that "[f]oreign sovereigns rely only on the 'identity and nationality' attestation of the Secretary of State, not on the passport's other information such as the passport-holder's date or place of birth," *id.* at 22. Menachem also cites evidence that "the United States Embassy in Tel Aviv issues death certificates that describe Shaarei Zedek Hospital in Jerusalem – the same hospital where the plaintiff was born – as located in 'JERUSALEM, ISRAEL.'" *Id.* at 26. As to the last point, the government denies that there is any such policy with respect to death certificates. Br. for Appellee 27 n.3.

And the government also takes issue with Menachem's other factual assertions.[6]

In light of all this, we believe the proper course is to remand the case to the district court so that both sides may develop a more complete record relating to these and other subjects of dispute.

*So ordered.*

---

[6] Some of the government's nonjusticiability arguments are based on separation-of-powers principles. Because "[t]he nonjusticiability of a political question is primarily a function of the separation of powers," *Baker v. Carr*, 369 U.S. 186, 210 (1962), these arguments overlap and, in light of our disposition, we decline to reach them.