# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 19, 2009   Decided March 13, 2009

No. 07-1007

DELAWARE DEPARTMENT OF NATURAL RESOURCES AND
ENVIRONMENTAL CONTROL,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

CROWN LANDING LLC AND STATOIL NATURAL GAS, LLC,
INTERVENORS

---

On Petition for Review of Orders
of the Federal Energy Regulatory Commission

---

 *Scott H. Angstreich* argued the cause for petitioner. With him on the briefs were *David C. Frederick*, *Daniel G. Bird*, *Joseph R. Biden, III*, Attorney General, Attorney General's Office of the State of Delaware, *Kevin P. Maloney*, Deputy Attorney General, and *Philip Cherry*.

 *Samuel Soopper*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Cynthia A. Marlette*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Frederic G. Berner Jr.* was on the brief for intervenor Crown Landing LLC.

Before: ROGERS, *Circuit Judge*, and SILBERMAN and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: Petitioner Delaware seeks review of two FERC orders by which the Commission conditionally approved an application to site, construct, and operate a liquid natural gas terminal near the mouth of the Delaware River. We dismiss the petition for lack of jurisdiction: Delaware lacks standing because it has not suffered an injury-in-fact.

I

In September 2004, Crown Landing LLC, a wholly-owned subsidiary of BP America Production Company, filed an application with the Commission to site, construct, and operate a liquid natural gas import terminal at the mouth of the Delaware River. Onshore portions of the proposed project were to be located in New Jersey, but a pier designed for the unloading of tanker ships was planned to extend beyond New Jersey waters into that portion of the river which appertains to neighboring Delaware.[1]

---

[1]The First State's title to certain submerged lands within a twelve-mile radius of the New Castle courthouse was conclusively determined by the Supreme Court in *New Jersey v. Delaware*, 291 U.S. 361, 374 (1934).

Section 3 of the Natural Gas Act ("NGA"), 15 U.S.C. §717b(a) *et seq.*, prohibits the importation of foreign natural gas without prior authorization by the Commission. As amended,[2] the NGA confers upon the Commission the authority to approve or deny applications for the "siting, construction, expansion, or operation of a [liquid natural gas] terminal." With certain limitations, irrelevant here, approval orders may be issued conditionally as the Commission deems necessary or appropriate.

The NGA specifically provides for the protection of rights granted to the states under the Coastal Zone Management Act of 1972 ("CZMA"), 16 U.S.C. § 1451 *et seq.*, and the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq*. Although the mechanisms differ, both of these statutes mandate that federal licensing authorities ensure compliance by proposed projects with relevant state-based environmental programs.

The CZMA tasks the states with the development of coastal zone protection programs in exchange for federal funding incentives. Upon approval of such a program by the National Oceanic and Atmospheric Administration, any applicant for a federal license to conduct activities in a coastal zone must certify that the proposed activity complies with the program adopted by the affected state. A copy of this certification must be furnished to the relevant state agency, which must inform the federal government within six months whether or not it concurs with the certification. Ordinarily, no license may be granted absent state approval of this compliance certification.[3]

---

[2] Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594 (2005).

[3] In the event that the state fails to inform the federal government of its decision within the allotted six month period, the state's

4

However, if the Secretary of Commerce concludes, whether on his own initiative or upon appeal by the applicant, that the project is consistent with the objectives of the CZMA or otherwise necessary on national security grounds, the state's pre-approval rights may be preempted and the project may proceed.

The CAA similarly requires each state to adopt a plan to implement, maintain, and enforce national air quality standards within the state. Once the Environmental Protection Agency has approved of a state plan, no department or agency of the federal government is authorized to license any activity that fails to conform with the plan. Federal agencies bear an "affirmative responsibility" to ensure that any proposed project conforms with the applicable state plan prior to approval. Under this statute, there is no provision permitting a federal official to override a state, but, on the other hand, there also does not appear to be any mechanism for the state specifically to disapprove a project.

Crown Landing did not file a CZMA certification with Delaware but did request a status decision from the state (we gather that a status decision is, in effect, a preliminary, yet preemptive, decision). On February 3, 2005, the Delaware Department of Natural Resources and Environmental Control, petitioner here, issued its decision and rejected the project. On appeal, Delaware's Coastal Zone Industrial Control Board unanimously affirmed that decision. Meanwhile, New Jersey filed an original action before the Supreme Court challenging Delaware's jurisdiction to regulate the Crown Landing terminal pursuant to its authority under the CZMA. The Supreme Court confirmed that Delaware indeed possesses this authority. *New Jersey v. Delaware*, 128 S. Ct. 1410, 1427-8 (2008).

concurrence with the proposal is conclusively presumed.

On June 20, 2006, the Commission issued an order approving Crown Landing's application subject to some sixty-seven conditions precedent.[4] The Commission acknowledged that the Crown Landing proposal is subject to coastal zone consistency reviews in New Jersey, Delaware, and Pennsylvania and thus concluded that the company must obtain the concurrence of the relevant state agencies prior to Commission approval of the commencement of construction. *See* Conditional Approval Order at ¶ 62,391; *see also id*. at ¶ 62,386. Accordingly, *final* approval by the Commission is subject to the condition that documentation of concurrence by the state of Delaware evidencing the consistency of the project with the state's Coastal Management Program be submitted by the company "**prior to construction**." *Id*. App. A, at ¶ 20 (emphasis in original). The order contains a parallel condition requiring pre-construction submission of an air quality analysis specifically demonstrating conformity with applicable state implementation plans under the CAA. *Id*. App. A, at ¶ 22.

Delaware requested agency rehearing on the basis that the Commission had exceeded its statutory authority by approving the application under its NGA powers *before* the requirements of the CZMA and CAA had been satisfied. In Delaware's view, issuance of an approval order–conditionally or otherwise–is *ultra vires* conduct unless the Commission has first ensured compliance with relevant state environmental programs. Rehearing was denied. Order Denying Rehearing and Issuing Clarification, *Crown Landing LLC*, Docket No. CP04-411-001, 117 FERC ¶ 61,209 (Nov. 17, 2006). Delaware's petition for review before this Court, filed in January 2007, was held in

---

[4] Order Granting Authority Under Section 3 of the Natural Gas Act and Issuing Certificate, *Crown Landing LLC; Texas Eastern Transmission LP*, Docket Nos. CP04-411-000, CP-04-416-000, 115 FERC ¶ 61,348 (June 20, 2006) ("Conditional Approval Order").

abeyance pending resolution New Jersey's original action before the Supreme Court. Then the Commission, joined by Crown Landing, moved to dismiss Delaware's petition on grounds of non-justiciability and lack of standing. We ordered the case restored to the oral argument calendar, deferred the dismissal motions, and ordered the parties to revisit their merits briefs in light of the Supreme Court's intervening decision.

II

As noted, FERC, along with intervenor Crown Landing, challenges Delaware's standing, asserting that the state lacks an injury-in-fact, because FERC's order is explicitly conditioned on state approval under the CZMA (and CAA). Indeed, the state has already exercised its CZMA authority to reject the project, which has received the imprimatur of the Supreme Court. *See New Jersey*, 128 S. Ct. at 1427-28. Delaware responds that it has suffered an injury because it was entitled under both statutes to block the project before FERC even proceeded to consider the matter. In other words, FERC lacked statutory authority to issue a conditional order, even if that condition preserved Delaware's right to veto the project.

Delaware argues that the CZMA unambiguously grants the state priority in the approval process. The statute reads in relevant part: "[n]o license or permit shall be granted by the Federal agency until the state or its designated agency has concurred with the applicant's certification." 16 U.S.C. § 1456(c)(3)(A). The CAA contains similar language. 42 U.S.C. § 7506(c)(1). The merits therefore depend upon whether FERC's conditional approval order constitutes a "license or permit" within the meaning of these statutes.

Of course, in considering standing, we must assume the validity of Delaware's merits argument, *i.e.*, that FERC violated

the statutory scheme by going ahead and issuing a conditional order, because Delaware had a statutory right to go first (*i.e.*, Alphonse ahead of Gaston). *See Warth v. Seldin*, 422 U.S. 490, 500 (1975); *see also Emergency Coalition to Defend Educational Travel v. Dep't of Treas.*, 545 F.3d 4, 10 (2008); *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007), *aff'd without reaching standing issue sub nom. District of Columbia v. Heller*, 128 S. Ct. 2783 (2008); *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003); *Am. Fed'n of Gov't Employees, AFL-CIO v. Pierce*, 697 F.2d 303, 305 (D.C. Cir. 1982).

Still, we are unable to see how FERC's allegedly illegal procedure causes Delaware any injury in light of FERC's acknowledgment of Delaware's power to block the project. Delaware is apparently concerned that it will face intense political pressure to acquiesce in FERC's conditional approval and reverse its own status decision–pressure it would somehow avoid were FERC not to have acted at all. We could hardly recognize this conjectural political dynamic as representing a concrete injury or, indeed, any sort of legally-cognizable injury. Delaware essentially is asking us to prevent it from changing its own mind.

To be sure, Delaware mentioned in its brief and stressed at oral argument that, under the CZMA, Crown Landing could potentially appeal any Delaware denial directly to the Secretary of Commerce. It is argued, therefore, that Delaware is not adequately protected by FERC's conditions. But as we read FERC's order, this is not so. The Commission conditioned its approval on Delaware's approval–which would be unaffected by any subsequent action by the Secretary of Commerce. FERC's counsel dispelled any doubt on this score by unequivocally assuring us at oral argument that any modification of the

Commission's position–including to recognize an intervention by the Secretary–would require a new order.[5]

That leaves Delaware with the argument that it was injured because it has suffered the loss of a statutory procedural right–the right to precede FERC and thereby prevent a FERC proceeding. Delaware's difficulty is that an alleged procedural injury does not confer standing unless the procedure affects a concrete substantive interest. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 n.8 (1992). In its reply brief, arguing in the alternative that the case is moot (and hence that FERC's order should be vacated), Delaware contends that because Crown Landing has "announced publicly that it is 'stopping work on the project,'" the controversy has gone away. But this statement implicitly concedes the obvious: that Delaware's substantive interest is the preventing of the construction of the project. Its alleged procedural injury has no bearing on that interest, because under FERC's order the project cannot be resurrected without Delaware's approval.

Delaware points to two cases to support its statutory procedural right claim–one is ours and one the Fifth Circuit's. In *Zivotofsky v. Secretary of State*, 444 F.3d 614 (D.C. Cir.

---

[5] It is not apparent that even if FERC allowed construction to move forward based on a secretarial decision, Delaware would have standing based only on their procedural (Alphonse-Gaston) theory, but, of course, Delaware would then have standing to challenge FERC's order and the Secretary's decision as an interpretation of the substantive statutes (including the APA). In any event, this scenario–which was not raised in Delaware's opening brief–hardly presents a ripe controversy now.

2006), we recognized that a child born in Jerusalem had standing to insist that his U.S. passport record his birthplace as Israel. But there the plaintiff claimed that the State Department had violated a statutory right to receive this precise passport alteration upon request; he did *not* assert a procedural injury at all, nor was the alleged harm limited to speculative future psychological effects, as the government argued. Rather, the right to a proper listing of the child's birthplace was a substantive right conferred by Congress.

At first glance, *Texas v. United States*, 497 F.3d 491 (5th Cir. 2007), seems more supportive of Delaware. Texas argued that it had been subjected to an "invalid administrative process" devised by the Secretary of the Interior to deal with approval of Indian gaming activities. But the key to the court's conclusion that Texas had suffered an injury-in-fact was that Texas had been deprived of an alleged statutory procedural protection–a court finding on whether Texas had negotiated in bad faith–that bore on the likelihood of an ultimate concrete injury, *i.e.*, the Secretary's approval of an Indian gaming proposal. In that regard, the case is no different from a failure to issue an environmental impact statement that can affect whether or not a project injurious to the plaintiff will be built. *Lujan*, 504 U.S. at 573 n.7. *See also Summers v. Earth Island Inst.*, 555 U.S. __, No. 07-463, slip op. at 8-9 (Mar. 3, 2009).[6]

---

[6] Delaware heavily relies on the Supreme Court's statement in *Massachusetts v. EPA* that state petitioners are "entitled to special solicitude in [courts'] standing analysis." 127 S. Ct. 1438, 1454-55 (2007) (quotation marks omitted). This special solicitude does *not* eliminate the state petitioner's obligation to establish a concrete injury, as Justice Stevens' opinion amply indicates. Indeed, the opinion devotes a full section to the "harms associated with climate change," *id*. at 1455, on its way to holding in the state's favor.

In sum, because FERC's order–as it stands now–cannot possibly authorize Crown Landing's project absent the approval of Delaware, the state has suffered no injury-in-fact, and thus lacks standing.

For the foregoing reasons, the petition for review is dismissed.

*So ordered.*