# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**No. 20-5159**

**September Term, 2020**

FILED ON: MAY 11, 2021

CAMPAIGN LEGAL CENTER,
> APPELLANT

v.

FEDERAL ELECTION COMMISSION,
> APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-00053)

———

Before: HENDERSON, MILLETT, and WILKINS, *Circuit Judges*.

## JUDGMENT

This case was considered on the record from the United States District Court for the District of Columbia, and on the briefs and oral argument of the parties. We have fully considered the issues and determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). It is,

**ORDERED** and **ADJUDGED** that the judgment of the District Court be affirmed in part and vacated in part.

## I

The Campaign Legal Center brought this lawsuit to challenge the Federal Election Commission's failure to act on the Center's administrative complaint alleging violations of the Federal Election Campaign Act ("Campaign Act"), 52 U.S.C. § 30101 *et seq.*, and of the Administrative Procedure Act, 5 U.S.C. § 706(1). The district court dismissed the Center's Campaign Act claim on the ground that the Center lacked Article III standing. Because the Center has not alleged any cognizable injury, we affirm the dismissal of Count 1 of the complaint for lack of standing, and vacate the district court's ruling on the merits of the APA claim also due to a lack of standing.

1

The Center is "a nonpartisan, non-profit organization[,]" whose activities include ensuring public access to "information regarding the financing of our election campaigns and the influence campaign donations have on governmental policy decisions." Federal Ct. Compl. ¶ 3 (J.A. 6). On November 1, 2016, the Center filed an administrative complaint with the Commission under 52 U.S.C. § 30109(a)(1) alleging that GEO Corrections Holdings, Inc., a private prison company, and Rebuilding America Now, a "super PAC," had violated the Campaign Act. Specifically, the Center alleged that GEO Corrections Holdings had made, and Rebuilding America Now had solicited and received, contributions in violation of 52 U.S.C. § 30119(a)(1). That provision prohibits certain political contributions by government contractors. The administrative complaint asked the Commission to investigate these charges and then (i) to "determine and impose appropriate sanctions for any and all violations," (ii) to "enjoin the respondents from any and all violations in the future," and (iii) to "impose such additional remedies as are necessary and appropriate to ensure compliance" with the Campaign Act. Administrative Compl. ¶ 27, https://campaignlegal.org/sites/default/files/11-01-16%20Rebuilding%20America%20Now%20 Contractor%20Complaint.pdf (last accessed May 4, 2021).[1]

The Center received an acknowledgment letter from the Commission three days after submitting its administrative complaint, but alleges that the Commission otherwise failed to take any action in response to the complaint for a year. Federal Ct. Compl. ¶¶ 19, 21 (J.A. 10–11). So in January 2018, the Center filed suit against the Commission in district court, alleging that the Commission's failure to act on the administrative complaint was "contrary to law" under the Campaign Act, 52 U.S.C. § 30109(a)(8)(A), and "unlawfully withheld and unreasonably delayed" agency action under the Administrative Procedure Act, 5 U.S.C. § 706(1). As relief, the Center sought (i) a declaration that the Commission's delay was contrary to law; (ii) an order requiring the Commission to "conform" with that declaration within 30 days; (iii) costs and attorney fees; and (iv) "such other relief the Court may deem just and proper." Federal Ct. Compl. at 8 (J.A. 12).

The district court dismissed the Campaign Act claim on the ground that the Center failed to establish Article III standing to prosecute that claim. The district court then dismissed the APA claim under Federal Rule of Civil Procedure 12(b)(6) on the ground that the Center had failed to state a viable legal claim for relief. The Center appeals only the district court's decision that the Center lacked standing to pursue its claim under the Federal Election Campaign Act.

## II

To demonstrate Article III standing at the threshold of a case, a plaintiff must plausibly allege three familiar requirements. First, the plaintiff must have suffered an injury-in-fact, meaning an injury that is "concrete and particularized" and "actual or imminent[,]" not "conjectural or

---

[1] The administrative complaint was neither included in the joint appendix on appeal nor attached to the Center's complaint in federal court, but it was cited by the court complaint. Because it is central to the Center's claim, it is incorporated by reference into that complaint. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004). In addition, the court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017) (quotation omitted).

hypothetical." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (internal quotation marks omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Second, the plaintiff must show causation—that is, the plaintiff must plausibly allege that the injury is "fairly traceable" to the challenged conduct of the defendant. *Committee on Judiciary of U.S. House of Representatives v. McGahn*, 968 F.3d 755, 763 (D.C. Cir. 2020) (en banc) (quotation omitted). And third, the injury must be "redressable by a favorable decision by the court." *United States House of Representatives v. Mnuchin*, 976 F.3d 1, 6 (D.C. Cir. 2020). When determining whether a plaintiff has standing, "the court must assume that the [plaintiff] will prevail on the merits." *McGahn*, 968 F.3d at 762.

The Center asserts two bases for standing, neither of which succeeds.

**A**

The Center's primary argument for standing is that the Campaign Act confers legally enforceable rights on it, and that the Commission's violation of those statutory rights by itself creates an Article III injury. In support of that argument, the Center points to the Campaign Act's provisions for private enforcement. Specifically, Section 30109(a)(1) of the Act permits "any person who believes that a violation of this Act * * * has occurred" to "file a complaint with the Commission." 52 U.S.C. § 30109(a)(1). The Act then provides a detailed procedure through which the Commission must process and investigate the complaint, and, in appropriate cases, take enforcement action. *See id.* § 30109(a)(1)–(7). Finally, Section 30109(a)(8) provides that "[a]ny party aggrieved" either (i) "by an order of the Commission dismissing [that] complaint[,]" or (ii) "by a failure of the Commission to act on such a complaint during the 120-day period beginning on the date the complaint is filed" may file suit in federal district court challenging the Commission's action or inaction. *Id.* § 30109(a)(8)(A). The statute provides that the district court, in turn, "may declare that the dismissal of the complaint or the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days[.]" *Id.* § 30109(a)(8)(C).

The Center contends that this statutory scheme, and in particular the judicial enforcement provisions of Section 30109(a)(8), confer on the Center a "substantive statutory right to timely [Commission] action on [the Center's] administrative complaint"—and that statutory injury establishes standing to sue. Center Br. 17.

Settled precedent says otherwise. The Supreme Court has ruled repeatedly that the "deprivation of a procedural right" alone, like an agency's failure to process an administrative complaint, "is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Instead, the plaintiff must identify "some concrete interest that is affected by the [procedural] deprivation[.]" *Id.*; *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016) (Plaintiffs "cannot satisfy the demands of Article III by alleging a bare procedural violation."); *Lujan*, 504 U.S. at 573 n.8 (rejecting claims of Article III standing grounded solely on "a 'procedural right' unconnected to the plaintiff's own concrete harm").

Circuit precedent is equally well established. "For a statutory violation to constitute an injury

3

in fact, * * * the statute must protect" some "concrete interest" of the plaintiff, meaning that the law must "afford the putative plaintiff a right to be free of a harm capable of satisfying Article III." *Jeffries v. Volume Servs. America, Inc.*, 928 F.3d 1059, 1064 (D.C. Cir. 2019).

More to the point, we have previously rejected claims of standing much like the Center's in this very statutory context. In *Common Cause v. Federal Election Commission*, 108 F.3d 413 (D.C. Cir. 1997), we held specifically that Section 30109(a)(8)(A) "does not confer standing; it confers a right to sue upon parties who otherwise already have standing[,]" *id*. at 419.[2]

The Center, though, has not identified any concrete interest it possesses that is harmed by the Commission's alleged failure to act on its administrative complaint. Instead, the Center argues only that the Campaign Act has given it a legal interest in having the agency "act[] on [its] duly filed complaint[.]" Center Br. 13.

But an interest "in proper administration of the laws (specifically, in agencies' observance of a particular, statutorily prescribed procedure)" is a generic interest in good government that is shared equally by all citizens and does not amount to a concrete or particularized Article III injury. *Lujan*, 504 U.S. at 576; *see Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 482–483 (1982) ("This Court repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law[.]") (formatting modified). Simply asserting a "bare procedural violation" is not enough to get in the courthouse door. *Spokeo*, 136 S. Ct. at 1549.

The Center's various attempts to sidestep the concrete-injury requirement are unavailing. The Center first tries to extricate itself from *Common Cause* by reasoning that the case involved a challenge to the Commission's dismissal of an administrative complaint, while the Center's case challenges the Commission's failure to act at all on its administrative complaint.

No dice. *Common Cause* presented and rejected the very same argument pressed by the Center here. There, as here, the plaintiff contended that Section 30109 embodies "a statutory promise to the complainant that the [Commission] will act on a complaint in a reasonable period of time[,]" and that "[w]hen the [Commission] violates the complainant's right to a prompt and lawful resolution of the complaint," the Commission causes an injury sufficient for Article III standing. *Common Cause*, 108 F.3d at 418 (formatting modified). Whatever the procedural differences, the standing problem in *Common Cause* and this case is exactly the same: To come to federal court, a plaintiff must allege some concrete and particularized injury that goes beyond merely "asserting that the [Commission] failed to process its complaint in accordance with law." *Id.* at 419.

The Center next equates Congress's creation of a statutory procedure to compel agency action with the creation of a substantive "right" to that action. Center Br. 21. But "[n]othing in the" Campaign Act "indicates Congress intended to identify or confer some interest separate and apart

---

[2] Since *Common Cause* was decided, the statutory provisions at issue have been recodified from 2 U.S.C. § 437g to their present location in the United States Code, 52 U.S.C. § 30109.

from a procedural right." *Summers*, 555 U.S. at 501 (Kennedy, J., concurring). Instead, the right to sue simply provides a mechanism for otherwise-injured parties to obtain congressionally mandated action.

The Center's analogy to standing under the Freedom of Information Act, 5 U.S.C. § 552, and the Federal Advisory Committee Act, 5 U.S.C. app. 2 § 1 *et seq.*, similarly misses the mark. Provisions of those statutes do create substantive rights that can be enforced consistent with Article III. That is because those statutes were deliberately designed and intended to confer a substantive informational benefit on requestors by requiring agencies to disclose particular records to them. *See Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 449–450 (1989). There is nothing in the text of the Campaign Act, by contrast, that creates such a concrete benefit or elevates suits against the Commission for unlawful delays into anything other than just a right to that procedure.

Finally, *Zivotofsky ex rel. Ari Z. v. Secretary of State*, 444 F.3d 614 (D.C. Cir. 2006), is of no help to the Center. In that case, the statute at issue plausibly "conferred on [the plaintiff] an individual right to have 'Israel' listed as his place of birth on his passport and on his Consular Birth Report"—a right the infringement of which caused concrete injury. *Id.* at 619. In that way, *Zivotofsky* enforced the Article III requirement that alleged statutory violations must cause concrete injury to the plaintiff. *Cf. Spokeo*, 136 S. Ct. at 1548. That Article III injury is exactly what the Center's complaint is missing.

**B**

The Center separately argues for the first time on appeal that it has standing because it has suffered an "informational injury" in that the Commission's failure to act on the Center's complaint has deprived the Center of information that would be useful to its organizational mission. *Cf. Federal Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998) ("The 'injury in fact' that respondents have suffered consists of their inability to obtain information—lists of AIPAC donors * * * and campaign-related contributions and expenditures—that, on respondents' view of the law, the statute requires that AIPAC make public.").

The short answer is that the Center has forfeited this argument. Neither its federal court complaint nor its administrative complaint contains any allegation that the Center is seeking information, much less that the Center is injured by the lack of such information. Nor did the Center argue any such distinct informational injury before the district court.

The closest the Center comes is a general allegation that one of its organizational goals is "to ensure that the public has access to information regarding the financing of our election campaigns and the influence campaign donations have on governmental policy decisions." Federal Ct. Compl. ¶ 3 (J.A. 6). But that general description of the Center's organizational purposes does nothing to show how the Commission's alleged inaction here trenched upon that informational function or otherwise injured the Center. *Cf. Common Cause*, 108 F.3d at 418 (rejecting informational injury argument when the administrative complaint's allegation of informational deprivation was "nominal at best").

5

Nor is an information-gathering purpose somehow self-evident in the nature of the Center's administrative complaint. Unlike the voters who possessed informational standing in *Akins*, 524 U.S. at 21, the Center does not allege that any party is in violation of mandatory reporting or disclosure requirements. *See Common Cause*, 108 F.3d at 418 (finding no standing where what the complaint "desires is for the Commission to 'get the bad guys,' rather than disclose information"); *Judicial Watch v. FEC*, 180 F.3d 277, 278 (D.C. Cir. 1999) (per curiam) (finding no standing where "[n]owhere in its administrative or civil complaint did [the plaintiff] mention disclosure requirements or suggest that it desired documents that the alleged violators were required to disclose").

At bottom, it is the Center's obligation to plead in its district court complaint a plausible claim that it has "suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quoting *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015)). It failed that task. Instead, the Center's administrative and federal court complaints reveal an interest only in making the Commission comply with the law's requirements. Article III requires more.

### III

After dismissing the Center's Campaign Act claim for lack of standing, the district court went on to address the merits of the Center's APA claim. But neither the Center nor the district court identified any independent argument in support of standing for the APA claim, nor can we conceive of any. Because we review judgments, and because standing implicates the court's subject-matter jurisdiction, *see Kaplan v. Central Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018), we vacate the district court's dismissal of the APA claim on the merits and remand with instructions to dismiss that claim for lack of Article III standing. *See Kareem v. Haspel*, 986 F.3d 859, 869 (D.C. Cir. 2021).

* * * * *

Because the district court correctly ruled that the Center lacks Article III standing, the judgment dismissing the action is affirmed in part and vacated in part.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**Per Curiam**

6

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk