### CHARLES L. WILLIAMS, *vs.* THE SUFFOLK INSURANCE COMPANY.

The government of the United States having insisted, and continuing to insist, through its regular executive authority that the Falkland islands do not constitute any part of the dominions within the sovereignty of Buenos Ayres, and that the seal fishery at those islands is a trade free and lawful to the citizens of the United States, and, beyond the competency of the Buenos Ayres government to regulate, prohibit, or punish; it is not competent for a Circuit Court of the United States to inquire into, and ascertain by other evidence the title of the government of Buenos Ayres to the sovereignty of the Falkland islands.

When the executive branch of the government, which is charged with the foreign relations of the United States, shall, in its correspondence with a foreign nation, assume a fact in regard to the sovereignty of any island or country, it is conclusive on the judicial department.

Where a vessel, insured on a sealing voyage, was ordered by the government of Buenos Ayres not to catch seal off the Falkland islands, and having continued to take seal there the vessel was seized and condemned, under the authority of the government of Buenos Ayres; the government of the United States not having acknowledged, but having denied the right of Buenos Ayres to the Falkland islands; the insurers were liable to pay for the loss of the vessel and cargo: the master, in refusing to obey the orders to leave the island, having acted under a belief that he was bound so to do as a matter of duty to the owners, and all interested in the voyage, and in vindication of the right claimed by the American government. The master was not bound to abandon the voyage under a threat or warning of such illegal capture.

ON a certificate of division from the Circuit Court of the United States for the district of Massachusetts.

This was an action brought by the plaintiff, a citizen of the state of Connecticut, against the Suffolk Insurance Company of Boston, Massachusetts, to recover a loss, on part of the schooner Harriet, and part of her cargo, they having been insured by the defendants. There was a similar action against the defendants to recover losses sustained on the schooner Breakwater and her cargo. Both the cases were brought from the Circuit Court of Massachusetts, on certificates of division of opinion of the judges of the Circuit Court.

The cases were stated in the record as follows:—

" These were actions of assumpsit on policies of insurance, dated the 19th of August, 1830, whereby the plaintiff caused to be insured by the defendants for nine per cent. per annum premium, warranting twelve per cent. 'lost or not lost,' forty-nine hundred and nineteen dollars on fifteen sixteenths of schooner Harriet, and eighteen hundred and seventy-five dollars on board said vessel, at and from Stonington, Connecticut, commencing the risk on the 12th day of August, instant at noon, to the southern hemisphere, with liberty to stop for salt at the Cape de Verd islands, and to go round Cape Horn, and to touch at all islands, ports, and places for the purpose of taking seals, and for information and refreshments, with liberty to put his skins on board of any other vessel or vessels until she returns to her port of discharge in the United States; it being understood that the value of the interest hereby insured, as it relates to this insurance, is not to be diminished thereby. It is understood and agreed, that if the Harriet should not proceed south-easterly of

Cape Horn on a voyage towards the south Shetland islands, and there be no loss, then the premium is to be six per centum per annum, the assured warranting only nine per cent.: vessel valued at five thousand dollars; outfits valued at two thousand dollars.

"There was a similar policy underwritten by the defendants for the plaintiff on the same day, for the like voyage in all respects, of thirty-five hundred dollars, on the schooner Breakwater, and two thousand dollars on outfits on board, at the same premium; the vessel being valued at thirty-five hundred dollars, and the outfits at two thousand dollars, upon which, also, an action was brought.

"The declaration upon each policy averred a total loss, by the seizure and detention of one Lewis Vernet and other persons, pretending to act by the authority of the government of Buenos Ayres, with force and arms.

"The causes came on to be heard together, by the Court, upon certain facts and statements agreed by the parties; the parties agreeing that the verdict should be rendered by the jury for the plaintiff, and for the defendants; according to the opinion of the Court upon the matters of law arising upon those facts and statements; and the cause was argued by C. G. Loring for the plaintiff, and by Theophilus Parsons for the defendants. It appeared from these facts and statements, that both of the vessels insured were bound on a sealing voyage, and proceeded to the Falkland islands in pursuance thereof; and were there both seized by one Lewis Vernet, acting as governor of those islands, under the appointment and authority of the government of Buenos Ayres. The Harriet was seized on the 30th of July, 1831, and was subsequently carried by the captors to Buenos Ayres; where certain proceedings were had against her in the tribunals, and under the sanction of the government of Buenos Ayres. She has never been restored to the defendants, but has been condemned for being engaged in the seal trade at the Falkland islands.

"The Breakwater was seized at the islands, on or about the 18th day of August, 1831, and was afterwards re-captured by the mate and crew, who remained on board; and was by them brought home to the United States; and after her arrival was libelled for salvage in the district Court of Connecticut district, and salvage was awarded of one-third part of the proceeds of vessel and property.

"Copies of the orders and decrees of the Courts of Buenos Ayres respecting the seal fisheries, of the appointment of Vernet as governor of the Falkland islands, of the proceedings against the Harriet, of the correspondence of the American government with the Buenos Ayrean government, relative to the jurisdiction of the Falkland islands; were produced and read, de bene esse, in the case."

The following points and questions occurred in the case, on which the judges of the Circuit Court were divided in opinion; and they were stated and ordered to be certified to the Supreme Court to be finally decided:—

[Williams *vs.* The Suffolk Insurance Company.]

1. Whether, inasmuch as the American government has insisted and does still insist, through its regular executive authority, that the Falkland islands do not constitute any p rt of the dominions within the sovereignty of the government of Buenos Ayres, and that the seal fishery at those islands is a trade free and lawful to the citizens of the United States, and beyond the competency of the Buenos Ayrean government to regulate, prohibit, or punish; it is competent for the Circuit Court in this cause, to inquire into and ascertain by other evidence, the title of said government of Buenos Ayres to the sovereignty of the said Falkland islands; and if such evidence satisfies the Court, to decide against the doctrines and claims set up and supported by the American government on this subject; or whether the action of the American government on this subject is binding and conclusive on this Court, as to whom the sovereignty of those islands belongs.

2. Whether, if the seizure of the Harriet, by the authority of the Buenos Ayrean government, for carrying on the seal fishery at the Falkland islands, was illegal and contrary to the law of nations, on account of the said islands not being within the territorial sovereignty of the said Buenos Ayrean government, and the master of the Harriet had warning from the government of the said islands under the government of Buenos Ayres, that he should seize the said Harriet if she should engage in the seal fishery, and after such warning, the master of the Harriet engaged in such seal fishery, and the Harriet was illegally seized and condemned therefor, the loss by such seizure and condemnation was a loss for which the plaintiff is entitled to recover in this case; if the master of the Harriet acted, in engaging in such seal fishery bona fide, and with a sound and reasonable discretion, and under a belief that he was bound so to do, as a matter of duty to his owners, and all others interested in the voyage, and in the vindication of the rights recognised and claimed by the American government; or whether he was bound by law to abandon the voyage under such a threat and warning of such illegal seizure.

The case was submitted to the Court by Messrs. C. G. Loring and E. G. Loring for the plaintiff; and by Mr Parsons for the defendants.

The printed argument for the plaintiff contained a full statement of the case.

Mr. Parsons, for the defendants, contended,—

1. That the Malvinas are rightfully in possession of Buenos Ayres; and that historical evidence, and established principles of the law of nations show this to be so.

2. That however this may be, the Courts of this country will not decide this question against Buenos Ayres, unless authorised to do so by a formal act of our government: Buenos Ayres being a nation friendly to us, claiming the Malvinas, certainly under colour of right, and claiming and exercising that dominion for many years.

3. That there is no such act of our government. An American sloop of war, (the Lexington, captain Duncan,) arriving at Buenos Ayres, soon after the seizure of the Harriet and Breakwater, proceeded to the Falklands, and broke up the establishment by violence. The government of Buenos Ayres complained urgently of this, and a correspondence ensued, wherein our Consul, and our Charge d'Affaires at Buenos Ayres, and our Secretary of State, took a part; but the question remains unsettled between the countries;—and,

4. By the constitution of this country, it is of vital importance that our Courts call nothing an act of the government but one which passes through the forms of the Constitution, and has the force and sanction of regular enactment. No analogies drawn from European nations (if any there be) can apply; because the Judiciary holds no such place, and is intrusted with no such duties in other nations.

It would seem difficult to doubt, from the historical evidence, and the plain principles of territorial and international law, that the ancient government of Spain, and the government of Buenos Ayres as their successor, had a right, as owners of the islands and the coast, to regulate the fisheries thereon, and within a reasonable distance of their shores, and that the decrees actually passed are therefore justifiable by the laws of nations; and, consequently, fishing in violation of those decrees is an illicit and prohibited trading within the policy. It follows inevitably that a seizure for that cause is not protected by the policy, though the condemnation may be informal.

If it be said, that the trespassers upon these islands and their fisheries appear to have been notified and threatened before, and then permitted to transgress with impunity, and that punishment for the offence was therefore unlawful; there is surely an obvious and sufficient answer to this. It is, that after mild means had been carried so far as to prove them ineffectual, more positive measures were resorted to. This is a plain and fair statement of the whole case upon this point; and if the whole testimony were examined, and the indisputable facts of the case considered, they would fully confirm this view. Will the Court then say that forgiveness, with renewed prohibition and caution, implies perpetual forgiveness? That if the first offence, or any single offence, be pardoned by a nation, or one of its authorities, it shall never be lawful again to punish the offence; how often soever it be repeated, or howsoever aggravated the circumstances by which it is attended? It can hardly be expected that such a principle as this can receive the sanction of this Court; for it seems not more repugnant to law and justice, than to mere humanity.

Mr. Justice M'LEAN delivered the opinion of the Court:—

Two actions were commenced by the plaintiffs against the defendant, in the Circuit Court of the United States for the state of Massachusetts, on policies of insurance dated 19th August, 1830; whereby the plaintiffs caused to be insured by the defendants, for

nine per centum per annum premium, warranting twelve per centum lost or not lost, forty-nine hundred and nineteen dollars on fifteen-sixteenths of schooner Harriet; and eighteen hundred and seventy-five dollars on board said vessel, at and from Stonington, Connecticut, commencing the risk on the 12th August instant at noon, to the southern hemisphere; with liberty to stop for salt at the Cape de Verd islands, and to go round Cape Horn, and to touch at all islands, ports and places, for the purpose of taking seals, and for information and refreshments; with liberty to put his skins on board of any other vessel or vessels, until she returns to her port of discharge in the United States: it being understood that the value of the interest hereby insured, as it relates to this insurance, is not to be diminished thereby, &c.

On the same day there was a similar policy of thirty-five hundred dollars on the schooner Breakwater; and two thousand dollars on outfits on board, at the same premium, &c.

And on the trial the following points were raised in the case, on which the opinions of the judges were opposed, and on which the case is certified to this Court.

1. Whether, inasmuch as the American government has insisted, and does still insist, through its regular executive authority, that the Falkland islands do not constitute any part of the dominions within the sovereignty of the government of Buenos Ayres; and that the seal fishery at those islands is a trade free and lawful to the citizens of the United States, and beyond the competency of the Buenos Ayres government to regulate, prohibit, or punish; it is competent for the Circuit Court in this cause, to inquire into, and ascertain by other evidence, the title of said government of Buenos Ayres to the sovereignty of the said Falkland islands; and if such evidence satisfies the Court, to decide against the doctrines and claims set up and supported by the American government on this subject: or whether the action of the American government on this subject is binding and conclusive on this Court, as to whom the sovereignty of those islands belongs.

2. Whether, if the seizure of the Harriet by the authority of the Buenos Ayrean government, for carrying on the seal fishery at the Falkland islands, was illegal and contrary to the law of nations, on account of the said islands not being within the territorial sovereignty of the said Buenos Ayrean government; and the master of the Harriet had warning from the governor of the said islands under the government of Buenos Ayres, that he should seize the said Harriet if she should engage in the seal fishery; and after such warning the master of the Harriet engaged in the seal fishery; and the Harriet was illegally seized and condemned therefor; the loss by such seizure and condemnation was a loss for which the plaintiff is entitled to recover in this case, if the master of the Harriet acted in engaging in such seal fishery bona fide, and with a sound and reasonable discretion, and under a belief that he was bound so to do as a matter of duty to his owners and all others interested in

the voyage; and in the vindication of the rights recognised and claimed by the American government: or whether he was bound by law to abandon the voyage under such a threat and warning of such illegal seizure.

. . As the fact is stated in the first point certified, that there is a controversy between this government and that of Buenos Ayres, whether the jurisdiction is rightful, which is assumed to be exercised over the Falkland islands by the latter; and that this right is asserted on the one side and denied by the other, it will not be necessary to look into the correspondence between the two governments on the subject.

To what sovereignty any island or country belongs, is a question which often arises before Courts in the exercise of a maritime jurisdiction; and also in actions on policies of insurance.

Prior to the revolution in South America, it is known that the Malvinas, or Falkland islands, were attached to the vice-royalty of La Plata, which included Buenos Ayres. And if this were an open question, we might inquire whether the jurisdiction over these islands did not belong to some other part, over which this ancient vice-royalty extended, and not to the government of Buenos Ayres: but we are saved from this inquiry by the attitude of our own government, as stated in the point certified.

And can there be any doubt, that when the executive branch of the government, which is charged with our foreign relations, shall in its correspondence with a foreign nation assume a fact in regard to the sovereignty of any island or country, it is conclusive on the judicial department? And in this view it is not material to inquire, nor is it the province of the Court to determine, whether the executive be right or wrong. It is enough to know, that in the exercise of his constitutional functions, he has decided the question. Having done this under the responsibilities which belong to him, it is obligatory on the people and government of the Union.

If this were not the rule, cases might often arise in which, on the most important questions of foreign jurisdiction, there would be an irreconcilable difference between the executive and judicial departments. By one of these departments, a foreign island or country might be considered as at peace with the United States; whilst the other would consider it in a state of war. No well regulated government has ever sanctioned a principle so unwise, and so destructive of national character.

In the cases of Foster *vs.* Neilson, 2 Peters, 253. 307, and Garcia *vs.* Lee, 12 Peters, 511, this Court have laid down the rule, that the action of the political branches of the government in a matter that belongs to them, is conclusive.

And we think in the present case, as the executive, in his message, and in his correspondence with the government of Buenos Ayres, has denied the jurisdiction which it has assumed to exercise over the Falkland islands; the fact must be taken and acted on by this Court as thus asserted and maintained.

[Williams *vs.* The Suffolk Insurance Company.]

The decision of the first point materially affects the second, which turns upon the conduct of the master.

If these islands are not within the jurisdiction of the Buenos Ayrean government, the power assumed and exercised by Governor Vernet was unauthorized, and the master was not bound to regard it. He was not necessarily to be diverted from the objects of his voyage, and the exercise of rights which belonged in common to the citizens of the United States by an unauthorized threat of the seizure of his vessel. He might well consider the prohibition of Vernet as influenced by personal and sinister motives, and would not be enforced. If the principle were admitted, that the assured were bound to regard every idle threat of any individual who might assume to exercise power, as in this case, it would be most injurious, and in many cases destructive, to commercial rights.

The inquiry is, whether the master, under all the circumstances of the case, acted in good faith, and with ordinary prudence.

If he acted fraudulently, he was guilty of barratry; and the underwriters are discharged.

In 4 Taunton, 858, Mr. Justice Gibbs, in giving the opinion of the Court, lays down the true rule. " The master," says he, " being asked why he had not British colours and British papers, said, I cannot have them, because I have not a British register. He stands on his strict rights. He says, I will do nothing to endanger my owners; I am a neutral, and I have a right to enter your port. The master really communicated the true facts of the case when she was searched; and says, I cannot go off, because of my charter-party The other says: Then I will seize you. We think, then, each party stands on his strict rights; and we are now to consider the strict point of law, not the question whether it would have been more prudent for him to go to Tercera, but whether he acted bona fide."

And so in the present case, the question is not whether the master of the Harriet would not have acted with more prudence had he yielded to the inhibition of Vernet; but whether, in placing himself upon his strict rights, he did not exercise a proper discretion.

He violated no regulation which he was bound to respect. In touching at the Falkland islands, for the purpose of taking seal, he acted strictly within the limits of his commercial enterprise; and did not voluntarily incur a risk which should exonerate the insurers.

It was the duty of the master to prosecute his voyage, and attain the objects of it, for the benefit of his owners: and, in doing this, he was not bound to abandon the voyage by any threat of illegal seizure. We think, therefore, that the underwriters are not discharged from liability, by the conduct of the master, as stated in the second point.

The other case depending upon the same principles, the same certificate will be affixed to that case.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States, for the district of Mas-.

[Williams vs. The Suffolk Insurance Company.]

sachusetts, and on the points and questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this Court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this Court, 1st, That, inasmuch as the American government has insisted and still does insist, through its regular executive authority, that the Falkland islands do not constitute any part of the dominions within the sovereignty of the government of Buenos Ayres, the action of the American government on this subject is binding on the said Circuit Court, as to whom the sovereignty of those islands belongs. And, secondly: That the seizure and condemnation of the Harriet was a loss for which the plaintiff is entitled to recover in this case, under the circumstances as stated in the second point certified. Whereupon, it is ordered and adjudged by this Court that it be so certified to the said Circuit Court, accordingly.