(C. D. 1207)

S. S. STEINER, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 31, 1950)

*Benjamin A. Levett* (*Meyer Ohlbaum* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Harold L. Grossman,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; JOHNSON, J., not participating

CLINE, Judge: This is a protest against the collector's assessment of duty on certain hops at 24 cents per pound under paragraph 780 of the Tariff Act of 1930. It is claimed that duty should have been assessed at 18 cents per pound under said paragraph, as modified by the trade agreement with Czechoslovakia, T. D. 49458.

The pertinent provisions of the statutes are as follows:

PAR. 780. Hops, 24 cents per pound; hop extract, $2.40 per pound; lupulin, $1.50 per pound.

PAR. 780 [as modified by the trade agreement with Czechoslovakia, T. D. 49458]. Hops valued at 30 cents or more per pound_____ 18¢ per lb.

At the trial it was stipulated as follows:

1. That the merchandise forming the subject matter of this suit was a product of the district of Saaz in the Sudeten area of Czechoslovakia which was a part of those Sudeten areas under German occupation referred to in T. D. 49743, 74 Tr. Dec. 223.

2. That the merchandise consists of hops valued at over 30 cents per pound which was assessed with duty under paragraph 780 of the Tariff Act of 1930 at the rate of 24 cents per pound.

3. That all of said merchandise was withdrawn from government bonded warehouse prior to March 24, 1939.

The record does not show when the merchandise was shipped from the Saaz district in the Sudeten area of Czechoslovakia but the official papers reveal that it was exported from Hamburg, Germany, on December 16 and 17, 1938, and that entry was made on December 23, 1938.

On November 10, 1938, the following instructions were issued by the Commissioner of Customs (T. D. 49743):

*To Collectors of Customs and Others Concerned:*
There is published below a copy of a telegram dispatched on November 9, 1938, to collectors of customs, which is self-explanatory.

> State Department having today announced to Treasury Department a change of jurisdiction from Czechoslovak to German in those Sudeten areas now under German occupation, products of those areas exported from any country on or after November 10, 1938, shall be regarded as products of Germany for the purposes of the marking provisions of the Tariff Act of 1930, and for determining applicable rates of duty. Such areas are to be regarded as parts of Germany on and after November 10, 1938, for determining dates of exportation for customs purposes. Give importers all possible notice.

Subsequently, the trade agreement with Czechoslovakia was terminated by proclamation of the President as of April 22, 1939 (T. D. 49824).

It appears that the merchandise involved herein falls squarely within the instructions of the Commissioner of Customs (T. D. 49743), but plaintiff claims that until the President terminated the trade agreement by the proclamation above mentioned, merchandise the product of Czechoslovakia was entitled to the benefit of the rates provided in the agreement and that there was no authority vested in the Commissioner of Customs to deny such benefits.

However, the action of the Commissioner of Customs was based upon a finding by the State Department that the jurisdiction of certain areas of Czechoslovakia had been changed to German. That determination is not subject to judicial inquiry or decision. *Oetjen* v. *Central Leather Company,* 246 U. S. 297; *Terlinden* v. *Ames,* 184

U. S. 270; *Williams* v. *Suffolk Insurance Company*, 38 U. S. 415. In the case first cited the court said (p. 302):

The conduct of the foreign relations of our Government is committed by the Constitution to the Executive and Legislative—"the political"—Departments of the Government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision. *United States* v. *Palmer,* 3 Wheat. 610; *Foster* v. *Neilson*, 2 Pet. 253, 307, 309; *Garcia* v. *Lee*, 12 Pet. 511, 517, 520; *Williams* v. *Suffolk Ins. Co.*, 13 Pet. 415, 420; *In re Cooper*, 143 U. S. 472, 499. It has been specifically decided that "Who is the sovereign, *de jure* or *de facto*, of a territory is not a judicial, but is a political question, the determination of which by the legislative and executive departments of any government conclusively binds the judges, as well as all other officers, citizens and subjects of that government. This principle has always been upheld by this court, and has been affirmed under a great variety of circumstances." *Jones* v. *United States*, 137 U. S. 202, 212.

In the instant case the State Department determined that the sovereignty of certain areas had changed from Czechoslovak to German; therefore, the products of such areas must be regarded as products of Germany. When the President proclaimed the trade agreement with Czechoslovakia on March 15, 1938, he addressed a communication to the Secretary of the Treasury directing that the proclaimed duties should not be applied to the products of Germany (T. D. 49458). Thus, the merchandise herein is properly dutiable under paragraph 780 of the Tariff Act of 1930 at 24 cents per pound.

In *United States* v. *Friedlaender & Co., Inc.*, 27 C. C. P. A. 297, C. A. D. 104, chinaware manufactured in the Sudeten area prior to November 10, 1938, but shipped therefrom after November 10, 1938, was marked "Czechoslovakia." It was held that this marking was not in compliance with section 304 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. The court said (p. 303):

It cannot be contended that the involved merchandise when it left its place of manufacture was a Czechoslovakian product. Still at the time of importation it was marked with the name of a country that was in being and it did not originate within the boundaries of that country. To the ultimate purchaser the mark would indicate as a fact that which was not true. This purchaser might refuse to buy German goods but might be perfectly willing to purchase Czechoslovakian goods, and by reason of the mark would be deceived in buying as the product of one country the product of another which he did not want. [Emphasis supplied.]

In the instant case also, the merchandise was not a Czechoslovakian product at the time of exportation. It follows that duty must be assessed at the rate applicable to German products.

We hold, therefore, that the collector properly assessed duty at 24 cents per pound under paragraph 780 of the Tariff Act of 1930. The protest is overruled and judgment will be rendered accordingly.