TATEL, Circuit Judge,
concurring:
Although I concur fully in the court’s opinion, I write separately to elucidate my thinking about the important and novel separation-of-powers question this case presents. The Secretary’s argument that Section 214(d) is unconstitutional turns on two subsidiary arguments: first, that the power to recognize foreign sovereigns belongs to the President alone; and second, that Section 214(d) interferes with the President’s exclusive exercise of that power. But I think it best to begin with an issue that underlies and helps frame these recognition power questions, namely, Congress’s so-called passport power.
*221 I.
It is beyond dispute that Congress’s immigration, foreign commerce, and naturalization powers authorize it to regulate passports. See Court’s Op. at 214-16; Secretary’s Br. at 45-46 (acknowledging that “Congress ... has the constitutional authority to generally regulate the form and content of passports in furtherance of its enumerated powers”). Zivotofsky would have us stop there. He reasons that because Congress has the power to regulate passports and because Section 214(d) is passport legislation, the statute is constitutional. This argument, however, overlooks the independent limitations the Constitution imposes even on legislation within Congress’s enumerated powers. That is, a statute that Congress would otherwise have authority to enact may still run up against some independent restriction on its power. For example, the Commerce Clause authorizes Congress to regulate interstate communications, but a communications statute may nevertheless run afoul of the First Amendment. See, e.g., Reno v. ACLU, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (holding that anti-indecency provisions of the Communications Decency Act violated the First Amendment).
The fact that Congress has affirmative authority to regulate passports thus does not resolve the question of whether Section 214(d) comports with the separation of powers. It does, however, help frame the quite narrow constitutional question we must answer. Congress has authority to regulate passports; we need only decide whether this particular exercise of that authority, Section 214(d), infringes on the Executive’s recognition power.
II.
As I noted at the outset, in order to demonstrate that Section 214(d) is unconstitutional the Secretary must begin by establishing that the recognition power in fact inheres exclusively in the President. This is because, as the court explains, see Court’s Op. at 204-05, a President may “take[] measures incompatible with the expressed ... will of Congress” only when he acts pursuant to an “exclusive” Executive power. Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 637-38 & n. 4, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Jackson, J., concurring). If the Constitution entrusts the recognition power exclusively to the President, as the Secretary claims, there remains the even more difficult question of whether Section 214(d) intrudes upon his exercise of that power. In resolving both questions, we find ourselves in relatively uncharted waters with few fixed stars by which to navigate.
A.
I have little to add to the court’s thorough discussion of whether the Constitution endows the President with exclusive power to recognize foreign sovereigns. As the court details, there is scant constitutional text to guide us and little contemporaneous evidence of the Framers’ intent. See Court’s Op. at 205-07. Moreover, although the court thoroughly recounts the historical precedents each side marshals in support of its position, see id. at 207-10, the most striking thing about this retelling is what is absent from it: a situation like this one, where the President and Congress disagree about a recognition question. To be sure, throughout our history Congress has often acquiesced in a President’s unilateral recognition of a foreign sovereign. See, e.g., id. at 207-08 (detailing President George Washington’s recognition of France’s post-revolutionary government). And on a few occasions, a President has voluntarily coordinated with Congress regarding a recognition decision. *222 See, e.g., id. at 21-22 (pointing to President Abraham Lincoln’s request that Congress endorse his recognition of Liberia and Haiti). But neither party (nor any of the amici) points to any time in our history when the President and Congress have clashed over an issue of recognition.
Given all that, it is unsurprising that the Supreme Court has had no occasion to definitively resolve the political branches’ competing claims to recognition power. True, the Court has consistently and clearly stated that courts have no authority to second-guess recognition decisions. See, e.g., Williams v. Suffolk Insurance Co., 38 U.S. 415, 420, 13 Pet. 415, 10 L.Ed. 226 (1839). And in so doing, it has often referred to the recognition power as inhering exclusively in the Executive. See, e.g., Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 410, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (“Political recognition is exclusively a function of the Executive.”). That said, the Court has also occasionally suggested that Congress and the President share that power. See, e.g. Jones v. United States, 137 U.S. 202, 212, 11 S.Ct. 80, 34 L.Ed. 691 (1890) (“Who is the sovereign ... of a territory, is not a judicial, but a political, question, the determination of which by the legislative and executive departments ... conclusively binds the judges.... ”). Significantly for our purposes, the Court has made many more statements falling in the former category than in the latter. But still and again, the Court has never squarely resolved the precise question we face today.
To say that the question has yet to be conclusively answered, however, is not to say—at least from the perspective of this “inferior” court—that the answer is unclear. All told, given the great weight of historical and legal precedent and given that “carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative,” United States v. Oakar, 111 F.3d 146, 153 (D.C.Cir.1997) (internal quotation marks omitted), we are compelled to conclude that “[political recognition is exclusively a function of the Executive,” Sabbatino, 376 U.S. at 410, 84 S.Ct. 923. Indeed, all three of our colleagues who considered this question the last time this case was before us agreed. See Zivotofsky v. Secretary of State, 571 F.3d 1227, 1231 (D.C.Cir.2009), vacated and remanded by Zivotofsky v. Clinton, — U.S. -, 132 S.Ct. 1421, 182 L.Ed.2d 423 (2012); id. at 1240 (Edwards, J., concurring). To hold otherwise, we would have to disregard not only their considered views, but also the Supreme Court’s repeated statements to the same effect, see e.g., Goldwater v. Carter, 444 U.S. 996, 1007, 100 S.Ct. 533, 62 L.Ed.2d 428 (1979) (Brennan, J., dissenting) (“Our cases firmly establish that the Constitution commits to the President alone the power to recognize, and withdraw recognition from, foreign regimes.” (citing Sabbatino, 376 U.S. at 410, 84 S.Ct. 923; Baker v. Carr, 369 U.S. 186, 212, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); United States v. Pink, 315 U.S. 203, 228-30, 62 S.Ct. 552, 86 L.Ed. 796 (1942))), as well as centuries of largely consistent historical practice, see Court’s Op. at 207-10. Moreover, in light of the President’s “primary responsibility for the conduct of our foreign affairs,” New York Times Co. v. United States, 403 U.S. 713, 741, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971), locating the recognition power in the Executive branch conforms to our broader constitutional design.
B.
The critical question, then, is whether Section 214(d) in fact infringes on the President’s exclusive authority to recog *223 nize foreign sovereigns. The Secretary’s position is straightforward: By preventing passport holders from identifying a place of birth that conflicts with the President’s recognition determinations, the Secretary’s place-of-birth policy implicates recognition. This is all the more evident in the context of Jerusalem. As Judge Edwards put it, “The Secretary’s rules regarding the designation of Jerusalem on passports ... plainly implement the Executive’s determination not to recognize Jerusalem as part of any sovereign regime.” Zivotofsky, 571 F.3d at 1241-42 (Edwards, J., concurring). Given that the Secretary’s place-of-birth policy implicates the recognition power and given that Section 214(d) displaces that policy, the Secretary reasons, the statute unconstitutionally intrudes on the President’s recognition power.
Zivotofsky sees things differently. His first and broadest contention is that the President’s recognition power, even if exclusive, does not include the power to determine whether certain territory belongs to a particular foreign state. The recognition power may give the President authority to decide whether to recognize a foreign entity as a sovereign, he argues, but it includes no authority to determine that sovereign state’s territorial boundaries. This line of argument falls well short of its mark. The power to recognize a sovereign state’s territorial boundaries is a necessary corollary to the power to recognize a sovereign in the first place. For instance, recognizing an established sovereign’s former colony as a new, independent sovereign seems a straightforward exercise of what even Zivotofsky would concede to be the recognition power. But such recognition necessarily entails a boundary determination—the colony, once formally recognized as part of one sovereign’s territory, is effectively recognized as belonging to another. Indeed, precedent binding on this court confirms that the recognition power includes authority to determine territorial boundaries. See, e.g., Baker, 369 U.S. at 212, 82 S.Ct. 691 (“[T]he judiciary ordinarily follows the executive as to which nation has sovereignty over disputed territory----”); Pink, 315 U.S. at 229-30, 62 S.Ct. 552 (holding that the recognition power is “not limited to a determination of the government to be recognized,” but rather includes the power to take actions without which “the power of recognition might be thwarted”); Williams, 38 U.S. at 420 (“[W]hen the executive branch of the government ... assume[s] a fact in regard to the sovereignty of any island or country, it is conclusive on the judicial department.]”).
Zivotofsky’s narrower argument, powerfully developed in amicus briefs submitted by members of Congress and the Anti-Defamation League, is much stronger. Letting Jerusalem-born individuals choose to designate “Israel” as their place of birth, he contends, neither effects a recognition of Israel’s sovereignty over Jerusalem nor otherwise interferes with the President’s recognition power. As he emphasizes, nothing in Section 214(d) requires the Secretary to list “Israel” as the place of birth for all Jerusalem-born U.S. citizens. Rather, it merely enables those Jerusalem-born citizens who support Israel to choose to designate their place of birth consistently with that view. Aside from the Secretary’s say-so, Zivotofsky goes on to argue, there is simply no reason to conclude that the statute’s limited interference with the way the Secretary records a passport holder’s place of birth implicates the recognition power. Nor is there reason to believe that implementing Section 214(d) would adversely affect foreign policy. Because affected passports would list “Israel”—not “Jerusalem, Israel”—observers would discern no U.S. policy identifying Jerusalem as part of Israel.
*224 What makes this case difficult is that Zivotofsky is partly right. As the Secretary concedes, see Secretary’s Br. at 53 n. 13, a primary purpose of the place-of-birth field is to enable the government to identify particular individuals—e.g., by distinguishing one Jane Doe from another born the very same day. And the fact that the Secretary permits individuals to choose to list a city or area of birth instead of a country of birth does tend to suggest that its place-of-birth policy is also about personal identity.
That the Secretary’s policy is about identification and personal identity, however, does not mean that it does not also implicate recognition. In fact, it clearly does. Over the years, the Secretary has been incredibly consistent on this point: in no circumstances—including circumstances beyond the Jerusalem issue—can an individual opt for a place-of-birth designation inconsistent with United States recognition policy. See 7 FAM 1383.5-1383.7. For example, because the United States never recognized the Soviet Union’s annexation of Latvia, Lithuania, and Estonia, the Secretary “did not authorize entry of ‘U.S.S.R.’ or the ‘Soviet Union’ as a place of birth” for people born in these areas. 7 FAM 1340 Appx. D. Zivotofsky identifies no deviation from this policy, nor am I aware of one. The Taiwan directive to which Zivotofsky repeatedly points only underscores the Secretary’s consistency. Because the United States recognizes Taiwan as an area within China, permitting individuals to list “Taiwan” as their place of birth comports with the Secretary’s general policy. Moreover, one cannot possibly read the Foreign Affairs Manual’s application of that policy to Jerusalem as anything but an attempt to maintain consistency between the place-of-birth field and the President’s decision to recognize no sovereign’s claim to that city.
That the Secretary accommodates identity preferences to the extent they are consistent with recognition policy does little to undermine his position that the place-of-birth field in fact implicates recognition. The Secretary has consistently walked a careful line, permitting individual choice where possible while still ensuring consistency with foreign policy. Because the Secretary’s policy is about both identification and recognition, Congress could probably pass some laws about the place-of-birth field that do not interfere with the recognition power. For instance, Congress might be able to do little things, like require that the place of birth be listed in a particular font. It might even be able to do bigger things, like eliminate the place-of-birth field all together. Although doing so would inhibit identification of passport holders, it would not seem to interfere with the President’s recognition power.
But in enacting Section 214(d), Congress did intrude on the recognition power. The statute seeks to abrogate the Secretary’s longstanding practice of precluding place-of-birth designations that are inconsistent with U.S. recognition policy. According to the Secretary, Section 214(d) would also have consequences for the President’s carefully guarded neutrality on the question of Jerusalem. Although Zivotofsky challenges the President’s judgment that adverse foreign policy consequences would flow from implementing Section 214(d), he offers no reason why the President’s exercise of his constitutional power to recognize foreign sovereigns should hinge on a showing of adverse consequences. Even more importantly, courts are not in the business of second-guessing the President’s reasonable foreign policy judgments, cf., e.g., Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 111, 68 S.Ct. 431, 92 L.Ed. 568 (1948), and this one is perfectly reasonable. After all, “[a] passport is, in a sense, a *225 letter of introduction in which the issuing sovereign vouches for the bearer.” Haig v. Agee, 453 U.S. 280, 292, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981). And it is certainly plausible, as the Secretary insists, that American-issued passports listing “Israel” as the place of birth for Jerusalem-born citizens could disrupt decades of considered neutrality on the Jerusalem question.
If this were all we had—only the Secretary’s reasonable judgment that Section 214(d) infringes on the Executive’s exclusive recognition power—it might well be enough. After all, the Supreme Court has held that the recognition power “includes the power to determine the policy which is to govern the question of recognition.” Pink, 315 U.S. at 229, 62 S.Ct. 552. But there is more. As it turns out, this is not a case in which we must choose between the President’s characterization of a statute as implicating recognition and Congress’s contrary view. Indeed, Congress was quite candid about what it was doing when it enacted Section 214(d). That subsection is part of a provision titled “United States policy with respect to Jerusalem as the capital of Israel.” Foreign Relations Authorization Act, Fiscal Year 2003, Pub.L. No. 107-228 § 214, 116 Stat. 1365 (2002). The other sections under that heading are not about passports, they are about recognizing Jerusalem as part of—indeed, as the capital of—Israel. See id. And the legislative history makes doubly clear that recognition was Congress’s goal. See H.R. Conf. Rep. No. 107-671, at 123 (Sept. 23, 2002) (explaining that Section 214 “contains four provisions related to the recognition of Jerusalem as Israel’s capital” (emphasis added)); see also Court’s Op. at 217-18 (highlighting similar statements by various members of Congress).
So in the end, this is a separation-of-powers dispute in which both branches involved in the struggle actually agree. Congress intended Section 214(d) to alter recognition policy with respect to Jerusalem, and the President sees it the same way. Our decision makes us the third and final branch to reach this conclusion. And because the recognition power belongs exclusively to the President, that means Section 214(d) is unconstitutional.
III.
Although the foregoing analysis largely resolves this case, there is one loose end I think merits mention: Zivotofsky’s argument that the Secretary’s place-of-birth policy discriminates against supporters of Israel. In its most effective formulation, I take the point as follows: Under the Secretary’s policy, supporters of Palestine born in Tel Aviv can use their passports to signal their rejection of Israel’s claim to sovereignty by choosing to list “Tel Aviv” instead of “Israel” as their place of birth. By contrast, supporters of Israel born in Jerusalem cannot use their passports to signal their view that Jerusalem is part of Israel. Thus, the policy discriminates against Israel supporters, and Section 214(d) remedies that discrimination.
To the extent this is an independent claim that the Secretary’s policy is discriminatory, I agree it is waived. See Court’s Op. at 220. To the extent the argument is that Section 214(d) is constitutional because it remedies unlawful discrimination, such argument cannot overcome the recognition power problem for the same reason the passport power argument cannot: legislation Congress would otherwise have authority to enact may still run afoul of an independent constitutional restraint on congressional action.
I nonetheless think it important to note that the policy is not discriminatory. Indeed, unlike Section 214(d), which permits Jerusalem-born Israel supporters to list “Israel” as their place of birth but allows *226 no parallel option for Jerusalem-born Palestine supporters, the State Department’s Foreign Affairs Manual establishes a facially neutral policy that permits individuals to list then- city or area of birth in lieu of their country of birth. See 7 FAM 1383.5-2; 7 FAM 1383.6(a). The policy applies universally—not just in the context of Jerusalem—and treats Israel and Palestine supporters identically. Jerusalem-born Americans, whether supporters of Israel or supporters of Palestine, may not use their passports to make a political statement. And that is because permitting a Jerusalem-born individual to list “Israel” or “Palestine” would contradict the President’s decision to recognize neither entity’s sovereignty over Jerusalem.
True, as Zivotofsky emphasizes with his Tel Aviv example, individuals born within territory the United States has recognized as belonging to Israel can choose either to list “Israel” as their place of birth or instead to list a city or area of birth. Israel supporters may list “Israel,” and Palestine supporters may list something more specific. But although the political nature of the latter choice may be clearer insomuch as it marks a deviation from the default country-of-birth rule, that is an unintended consequence of a neutral policy. Indeed, were the United States to recognize the West Bank as the sovereign state of Palestine, the same would be true of Israel supporters born therein. That is, Palestine supporters could list “Palestine,” and Israel supporters could make the more obviously political choice to list their city or area of birth. It is only because the United States has not recognized any Palestinian territory that there currently exists no clear analogy to Zivotofsky’s Tel Aviv scenario.