# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 16, 2016                 Decided July 15, 2016

No. 15-5223

FRIENDS OF ANIMALS,
APPELLANT

v.

SALLY JEWELL, IN HER OFFICIAL CAPACITY AS SECRETARY OF
INTERIOR, DEPARTMENT OF THE INTERIOR,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00016)

---

*Jennifer E. Best* argued the cause for appellant. With her on
the briefs was *Michael R. Harris*.

*Matthew Littleton*, Attorney, U.S. Department of Justice,
argued the cause for appellee. With him on the brief were *John
C. Cruden*, Assistant Attorney General, and *Andrew C. Mergen*
and *Thekla Hansen-Young*, Attorneys.

Before: ROGERS, SRINIVASAN and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

Rogers, *Circuit Judge*: This appeal presents a single question: Does Friends of Animals have informational standing under Article III of the Constitution to challenge the failure of the Secretary of Interior to act in accordance with a deadline in section 4 of the Endangered Species Act?  Because this deadline provision does not itself mandate the disclosure of any information, Friends of Animals has not suffered an informational injury and therefore does not have informational standing.  Essentially, Friends of Animals has invoked informational standing prematurely.  At this stage in the administrative process, Friends of Animals is not entitled to any information.  Accordingly, we affirm the dismissal of its complaint.

## I.

Congress enacted the Endangered Species Act ("the Act"), Pub. L. No. 93-205, 87 Stat. 884 (1973) (codified as amended at 16 U.S.C. § 1531 *et seq.*), to conserve endangered and threatened species.  *See* 16 U.S.C. § 1531(b).  Section 4 empowers the Secretaries of the Interior and Commerce to designate species endangered or threatened and directs the Secretary of the Interior ("the Secretary") to list in the Federal Register all species covered by either designation. *Id.* § 1533(a), (c)(1).  Once a species is listed, it becomes subject to a variety of statutory and regulatory protections. *See, e.g.*, *id.* §§ 1533(d), 1536, 1538(a).

Any "interested person" may petition the Secretary to add a species or remove it from the endangered or threatened species lists. *Id.* § 1533(b)(3)(A); *see also* 5 U.S.C. § 553(e); 50 C.F.R. § 424.14(a).  A petition to list or de-list triggers two mandatory deadlines. *First*, "[t]o the maximum extent practicable, within 90 days after receiving the petition," the Secretary "shall make

a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). *Second*, if the Secretary makes a positive 90-day finding, then — within 12 months of having received the petition — she must make one of three findings: that the listing action requested is (1) not warranted, (2) warranted, or (3) warranted but temporarily "precluded" by pending proposals to list other species. *Id.* § 1533(b)(3)(B)(i)–(iii); *see generally Friends of Animals v. Ashe*, 808 F.3d 900, 902–03 (D.C. Cir. 2015).

Whichever of the three 12-month findings the Secretary makes, she must publish certain information in the Federal Register. If she makes a "not warranted" finding, she must publish that finding. 16 U.S.C. § 1533(b)(3)(B)(i). If she makes a "warranted" finding, she must publish a general notice and the text of a proposed regulation implementing the listing decision. *Id.* § 1533(b)(3)(B)(ii). If she makes a "warranted" but "precluded" finding, she must publish that finding, along with "a description and evaluation of the reasons and data on which the finding is based." *Id.* § 1533(b)(3)(B)(iii). The Secretary has delegated the section 4 listing responsibilities in part to the Fish and Wildlife Service ("FWS"). *See* 50 C.F.R. § 402.01(b); *see also Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 651 (2007); *Ashe*, 808 F.3d at 902.

The Act's citizen-suit provision permits "any person" to bring suit against the Secretary in federal district court alleging that the Secretary has failed to perform a non-discretionary act or duty required by section 4. 16 U.S.C. § 1540(g)(1)(C). The Secretary's duty to comply with section 4's 12-month finding provision — once triggered by a positive 90-day finding — is non-discretionary and therefore falls within the citizen-suit provision. *See Ashe*, 808 F.3d at 903. Before filing suit

pursuant to subparagraph (1)(C) of the citizen-suit provision, however, a plaintiff generally must give the Secretary 60 days' prior notice. 16 U.S.C. § 1540(g)(2)(C).

According to the complaint, Friends of Animals is a non-profit organization that seeks to protect animals from cruelty and exploitation. On September 27, 2013, it submitted two listing petitions asking the Secretary to list the spider tortoise and the flat-tailed tortoise as either threatened or endangered. More than eight months later, on June 9, 2014, the FWS issued positive 90-day findings in response to both listing petitions. *See* 90-Day Finding on Petitions To List Two Tortoises as Endangered or Threatened and and [sic] a Sloth as Endangered, 79 Fed. Reg. 32,900, 32,902. Twelve months after it had filed its petitions, Friends of Animals found itself still waiting for the 12-month findings and served the Secretary with notice of its intent to sue. In December 2014, the FWS sent Friends of Animals a letter stating that it planned to issue 12-month findings for both listing petitions in fiscal year 2017 (October 1, 2016 – September 30, 2017).

Subsequently, Friends of Animals filed suit in the district court, alleging that the Secretary had violated section 4 of the Act by not timely issuing 12-month findings in response to its listing petitions. It principally sought declaratory and injunctive relief, in particular a declaratory judgment that the Secretary had violated the Act by not issuing 12-month findings in response to the listing petitions and not listing the two tortoise species as endangered or threatened, and an order directing the Secretary to issue findings and rulemakings on each species within 60 days. The district court granted the Secretary's motion to dismiss the complaint for lack of Article III standing, ruling that Friends of Animals had failed to satisfy the elements of any of the three theories of standing it advanced: informational standing, organizational standing, and associational standing.

*Friends of Animals v. Jewell*, 115 F. Supp. 3d 107, 110–19 (D.D.C. 2015); FED. R. CIV. P. 12(b)(1). Friends of Animals appeals, challenging only the district court's ruling on informational standing. Our review is *de novo. See Friends of Animals v. Jewell*, No. 15-5070, 2016 WL 3125204, at *5 (D.C. Cir. June 3, 2016).

**II.**

Under any theory, "the irreducible constitutional minimum of standing contains three elements": (1) the plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there must exist "a causal connection between the injury and the conduct complained of"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). The burden of establishing these elements falls on the party invoking federal jurisdiction, and at the pleading stage, a plaintiff must allege facts demonstrating each element. *Id.* at 561. As the Supreme Court recently indicated, the existence and scope of an injury for informational standing purposes is defined by Congress: a plaintiff seeking to demonstrate that it has informational standing generally "need not allege any *additional* harm beyond the one Congress has identified." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis in original) (citing *FEC v. Akins*, 524 U.S. 11, 20–25 (1998), and *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989)). That type of injury is the sole basis on which Friends of Animals contends it has standing.

A plaintiff suffers sufficiently concrete and particularized informational injury where the plaintiff alleges that: (1) it has been deprived of information that, on its interpretation, a statute

requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure. *See Akins*, 524 U.S. at 21–22. The scope of the second part of the inquiry may depend on the nature of the statutory disclosure provision at issue. In some instances, a plaintiff suffers the type of harm Congress sought to remedy when it simply "s[eeks] and [is] denied specific agency records." *Pub. Citizen*, 491 U.S. at 449–50. In others, a plaintiff may need to allege that non-disclosure has caused it to suffer the kind of harm from which Congress, in mandating disclosure, sought to protect individuals or organizations like it. *Compare Akins*, 524 U.S. at 21–23, *and Shays v. FEC*, 528 F.3d 914, 923 (D.C. Cir. 2008), *with Nader v. FEC*, 725 F.3d 226, 230 (D.C. Cir. 2013).

Here, Friends of Animals's contention that it has standing fails at the first part of the inquiry, the *sine qua non* of informational injury: It is seeking to enforce a statutory deadline provision that by its terms does not require the public disclosure of information. The disclosure requirement Friends of Animals points to as the source of its informational injury does not impose any obligations on the Secretary until a later time in the listing process. To the contrary, Friends of Animals insists, section 4 of the Act gives it a right to two categories of information now, and it suffers informational injury because the Secretary's delay in issuing a 12-month finding deprives it of this information. The first category is the information the Secretary must publish in the Federal Register after making a 12-month finding. *See* 16 U.S.C. § 1533(b)(3)(B)(i)–(iii). The second is the information that the Secretary must publish in the Federal Register when listing an endangered or threatened species. *See id.* § 1533(c)(1). But as the prayer for relief in the complaint demonstrates, Friends of Animals does not yet have a right to either category of information.

Section 4(b)(3)(B) of the Act — the provision at issue here — contains two functional components, a deadline requirement and a disclosure requirement. The deadline requirement mandates that the Secretary make one of three types of findings within 12 months of receiving a listing petition: "(i) The petitioned action is not warranted . . ."; "(ii) The petitioned action is warranted . . ."; or "(iii) The petitioned action is warranted, but [precluded] . . . ." 16 U.S.C. § 1533(b)(3)(B). The disclosure requirement sets forth what information the Secretary must publish *after* making a given finding. The structure of section 4(b)(3)(B) makes clear that these requirements arise sequentially: "Within 12 months after receiving a petition . . . , the Secretary shall make one of the following findings: [type of finding], in which case the Secretary shall promptly [publish the relevant information in the Federal Register]." *See id.* By adopting this sequential procedural structure, Congress placed the Secretary under no obligation to publish any information in the Federal Register until after making a 12-month finding. The same is true of the requirement that the Secretary publish certain information in the Federal Register when listing a species, *see id.* § 1533(c)(1), which mandates that the Secretary disclose information only after she — or the Secretary of Commerce — has made a decision that a species warrants listing.

The structure of section 4(b)(3)(B) reflects the distinct purposes served by the deadline requirement and the disclosure requirement. Congress, in the Endangered Species Act Amendments of 1982, Pub. L. No. 97-304, § 2(a)(2), 96 Stat. 1411, 1412, added the 12-month decision-making deadline to section 4 in order to "force [agency] action on listing and de-listing proposals" — action that up to that point often had proceeded at a molasses-like pace — and to hasten "the foot-dragging efforts of a delinquent agency." H.R. REP. NO. 97-835, at 20–22 (1982) (Conf. Rep.); *see also* S. REP. NO. 97-418, at 4,

10–14 (1982). The disclosure requirement, on the other hand, functions to explain the Secretary's finding to various audiences and to set the stage for the next steps in the listing process. For example, the information the Secretary must publish after making a "not warranted" or "warranted but precluded" finding serves — among other purposes — to facilitate judicial review of the finding. *See* 16 U.S.C. § 1533(b)(3)(C)(ii); *see also* H.R. REP. NO. 97-835, at 21–22; S. REP. NO. 97-418, at 13–15. The information the Secretary must publish after making a "warranted" finding is necessary to initiate the notice-and-comment rulemaking process that will determine whether the species at issue is ultimately listed. *See* 16 U.S.C. § 1533(b)(3)(B)(ii); *see also id.* § 1533(b)(4)–(6), (b)(8).

Friends of Animals's complaint seeks to have the court order compliance with section 4(b)(3)(B)'s deadline requirement, not its disclosure requirement. This is, as the Friends of Animals president characterizes it, a "deadline suit[]." Decl. of Priscilla Feral ¶ 12 (Apr. 29, 2015). The complaint's only cause of action alleges that "[t]he Secretary failed to make a finding indicating whether the petitioned action was warranted within twelve months after receiving the petition[s] to list" the spider tortoise and the flat-tailed tortoise. Compl. ¶¶ 36–38. Friends of Animals's complaint, in other words, demonstrates precisely why it lacks informational injury: before the Secretary makes a 12-month finding, section 4(b)(3)(B) does not mandate the disclosure of any information whatsoever.

Friends of Animals attempts to overcome this hurdle by conflating the purposes of section 4(b)(3)(B)'s deadline and disclosure requirements. Together, in Friends of Animals's view, those two requirements confer on it "the right to timely information." Pet'r's Reply Br. 5 n.2 (emphasis omitted). Yet nothing in the Act or its legislative history indicates that the deadline requirement Friends of Animals seeks to enforce

should be read to incorporate the informational purpose of section 4(b)(3)(B)'s disclosure requirement. The deadline requirement was meant to spur a then-laggard agency to accelerate the pace of the listing process, which "ha[d] come to a virtual standstill" and was, in turn, undermining the species-protective purpose of the Act. S. REP. NO. 97-418, at 4. It was not meant, as Friends of Animals urges, to speed up the pace at which the Secretary disclosed information to the public.

Our other informational standing precedents in the Endangered Species Act context are to the same effect. In *American Society for the Prevention of Cruelty to Animals v. Feld Entertainment, Inc.*, 659 F.3d 13, 22–24 (D.C. Cir. 2011), the court held that a violation of section 9 of the Act could not give rise to an informational injury because the relevant provisions of section 9 did not require the release of any information but merely prohibited defined categories of behavior harmful to certain species protected under the Act. *Id.* at 22–24; *see also* 16 U.S.C. §§ 1532(19), 1538. The plaintiff's theory of informational standing was that if the defendant's conduct were found to violate section 9, the defendant might seek a permit, under section 10 of the Act, that would allow it to persist in its conduct, and section 10(c) would then require the Secretary to make public certain information as part of the permitting process. *Feld Entm't*, 659 F.3d at 22; *see also* 16 U.S.C. § 1539(a), (c). The court held that, whatever informational rights might exist under section 10, the plaintiff sought to enforce the prohibitions in section 9, which did not mandate the disclosure of any information. *Feld Entm't*, 659 F.3d at 23–24. A plaintiff can demonstrate informational injury, on the other hand, where it seeks to enforce section 10(c)'s disclosure requirements. *See Jewell*, 2016 WL 3125204, at *5–7. Here, Friends of Animals seeks to enforce section 4(b)(3)(B)'s deadline requirement, not its disclosure requirements. But section 4(b)(3)(B)'s deadline requirement,

like the prohibitions in section 9 of the Act and unlike the disclosure requirements in section 10(c), does not mandate the release of information.

The same distinction undercuts Friends of Animals's reliance on other informational standing cases. In those cases, the plaintiffs or petitioners had informational standing because they sought to enforce a statutory disclosure requirement. The plaintiffs in *Akins*, 524 U.S. at 21–22, 26, and *Public Citizen*, 491 U.S. at 445–47, 449–50, sued over whether certain organizations were subject to disclosure requirements in the Federal Election Campaign Act and the Federal Advisory Committee Act, respectively. In *Ethyl Corp. v. EPA*, 306 F.3d 1144 (D.C. Cir. 2002), the petitioner sought to enforce a provision of the Clean Air Act that, it maintained, required the EPA to take actions that it had been handling behind closed doors through public notice-and-comment rulemaking. *Id.* at 1146–48. Likewise unavailing is Friends of Animals's reliance on *American Canoe Association, Inc. v. City of Louisa Water and Sewer Commission*, 389 F.3d 536, 544–47 (6th Cir. 2004). Setting aside the Sixth Circuit's apparent conflation of informational and organizational standing, *compare id.* at 544–46, *with id.* at 546–47, the plaintiffs there sued to force a municipal utility to abide by a provision of the Clean Water Act that they contended imposed certain disclosure obligations. *Id.* at 539–40. Finally, in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–75 (1982), and *Zivotofsky ex. rel. Ari Z. v. Secretary of State*, 444 F.3d 614, 615–19 (D.C. Cir. 2006), the plaintiffs sought to compel compliance with statutory provisions that guaranteed a right to receive information in a particular form. By contrast, Friends of Animals seeks to enforce a deadline requirement that does not obligate the Secretary to disclose information.

Obviously our holding is narrow.  It cannot be read broadly to mean that a plaintiff suing to enforce the requirements of section 4 never has informational standing.  For example, suppose the FWS were to determine that the listing petitions at issue are warranted but precluded and yet declined to publish in the Federal Register "a description and evaluation of the . . . data on which the finding is based," as required by statute.  16 U.S.C. § 1533(b)(3)(B)(iii).  At that point, Friends of Animals may well have informational standing to sue to compel the publication of the relevant data — that is, to compel compliance with section 4(b)(3)(B)'s *disclosure* requirement.  *See Jewell*, 2016 WL 3125204, at *5–7; *cf. Feld Entm't*, 659 F.3d at 23–24.  Furthermore, none of the foregoing means that Article III leaves a plaintiff in Friends of Animals's position without judicial recourse.  The Secretary's alleged failure to make a 12-month finding within the statutorily mandated timeframe may have caused Friends of Animals some other cognizable injury in fact.  This case, however, does not present, nor do we decide, whether a claim of associational or organizational standing might support a challenge to the Secretary's failure to make the required 12-month finding.  We hold only that as to its "deadline suit" Friends of Animals has failed to establish that it has informational standing, the sole theory advanced before this court.

Accordingly, we affirm the dismissal of the complaint.
.