# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 20-5051**

**September Term, 2020**
FILED ON: FEBRUARY 16, 2021

LAWYERS' COMMITTEE FOR 9/11 INQUIRY, INC., ET AL.,
APPELLANTS

v.

CHRISTOPHER A. WRAY, DIRECTOR, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00824)

---

Before: GARLAND[*], PILLARD and KATSAS, *Circuit Judges*.

## J U D G M E N T

The court considered this appeal on the record from the United States District Court and the briefs of the parties. *See* D.C. Cir. R. 34(j). The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED**.

In 2004, the National Commission on Terrorist Attacks Upon the United States (9/11 Commission) issued a report on the September 11, 2001, attacks that included recommended actions to prepare for and prevent future terrorist attacks. In 2013, Congress appropriated $500,000 to the FBI "for a comprehensive review of the implementation of the recommendations related to the [FBI] that were proposed" in the 9/11 Commission's report. Consolidated and Further Continuing Appropriations Act, Pub. L. No. 113-6, 127 Stat. 198, 247 (2013). An explanatory statement published in the Congressional Record stated that the review should include "an assessment of any evidence now known to the FBI that was not considered by the 9/11 Commission related to any factors that contributed in any manner to the" 9/11 attacks. 159 Cong. Rec. S1305 (daily ed. Mar. 11, 2013); *see also* Consolidated and Further Continuing Appropriations Act, 127 Stat. at 199 (providing that the explanatory statement shall have the effect

---

[*] Judge Garland was a member of the panel at the time this case was submitted but did not participate in the final disposition of the case.

of "a joint explanatory statement of a committee of conference"). The explanatory statement also provided that the FBI "shall submit a report to the Committees [on Appropriations of the House and the Senate] . . . on the findings and recommendations resulting from this review." 159 Cong. Rec. S1305. The FBI established a 9/11 Review Commission to conduct the review, and that Commission sent a report containing the results of its review to Congress in 2015. The Review Commission concluded that "no new information obtained since the 9/11 Commission 2004 report would change the 9/11 Commission's findings regarding responsibilities for the 9/11 attacks." 9/11 Review Commission Report 107 (Mar. 2015) (J.A. 222).

The plaintiffs in this case are an individual and two organizations that have sued to compel the FBI to evaluate and report on certain additional evidence regarding the 9/11 attacks—actions they claim the 2013 appropriations provision required. The district court granted the government's motion to dismiss for lack of standing. *Lawyers' Comm. for 9/11 Inquiry, Inc. v. Wray*, 424 F. Supp. 3d 26, 30-35 (D.D.C. 2020). We affirm that dismissal. The plaintiffs contend that they have informational and organizational standing but have failed to establish cognizable injury in fact under either theory.

The plaintiffs first claim informational standing based on the 2013 appropriations provision requiring the FBI to review evidence regarding the 9/11 attacks. But, as the district court noted, "the *text* of this provision does not require the disclosure of information." *Id.* at 30. The plaintiffs rely on the explanatory statement's requirement that the FBI submit a report to Congress with the findings from its review. Even assuming such legislative history were relevant in interpreting an appropriations provision that unambiguously stops short of imposing any public disclosure requirement, the explanatory statement also makes no mention of disclosure of any information to the public. *Cf. FEC v. Akins*, 524 U.S. 11, 21 (1998).

The plaintiffs cite our precedent stating a plaintiff must merely allege that "it has been deprived of information that, *on its interpretation*, a statute requires the government or a third party to disclose to it." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (emphasis added). It is well established that "when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007). But, as with any claimed basis for standing, the plaintiff's reading of a statute for informational standing purposes must at least be plausible. *See Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015). The plaintiffs' argument that this appropriations provision, which says nothing about disclosure, nonetheless mandates disclosure is not plausible. *Cf. Friends of Animals*, 828 F.3d at 992 (holding no informational standing where the plaintiff was "seeking to enforce a statutory deadline provision that by its terms does not require the public disclosure of information"). As the government aptly explains, "plaintiffs cannot assume away the entire informational-standing inquiry merely by erroneously asserting that the statute creates a cognizable interest in information." Appellees Br. 10.

The organizational plaintiffs also assert various theories of organizational standing. They allege a range of efforts they have made and costs incurred to advance their missions that came to naught, they say, due to the Review Commission's failure to evaluate and publicly report on information they identified. They claim that if the Review Commission assessed and disclosed

the requested evidence, the State Department would provide them a monetary reward for information leading to the prosecution of terrorists; that they spent resources on their State Department reward application, on a petition urging the U.S. Attorney for the Southern District of New York to present their additional evidence to a grand jury, and on an engineering study on the causes of the collapse of the World Trade Center towers; and that the Department of Justice has "funded police actions . . . trying to convince citizens to treat" skeptics of the government's conclusions, including the plaintiffs, "as suspect terrorists who should not be trusted or listened to at all." Appellants Br. 48. To a large extent these claims "are part and parcel of the alleged informational injury" and thus fail with it. *Lawyers' Comm. for 9/11*, 424 F. Supp. 3d at 33.

In any event, none of the alleged organizational injuries constitutes a "concrete and demonstrable injury to [the plaintiffs'] activities" that is "likely to be redressed by a favorable court decision." *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1139 (D.C. Cir. 2011) (internal quotation marks and citations omitted). The plaintiffs' claim about a monetary reward, for example, rests on layers of speculation—that the FBI's disclosure of additional evidence would lead to the prosecution of terrorists, which in turn would cause the State Department to exercise its discretion to provide the plaintiffs a reward. "[W]e have repeatedly held that litigants cannot establish an Article III injury based on the 'independent actions of some third party not before this court.'" *See Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 25 (D.C. Cir. 2015) (formatting modified) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996) (en banc)). And the plaintiffs' alleged expenditures cannot plausibly be said to flow from the claimed unlawful conduct; they were instead "a self-inflicted budgetary choice that cannot qualify as an injury in fact." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017) (quoting *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011)).

The plaintiffs argue that the district court erred in denying their request "to bolster their standing allegations" via an evidentiary hearing or supplemental declarations. Appellants Br. 57. But the plaintiffs had sufficient opportunity to submit any such evidence before their complaint was dismissed. The government moved to dismiss for lack of standing before the plaintiffs filed their amended complaint; the plaintiffs could have attached standing declarations to their amended complaint or their opposition to the government's motion. *See Lawyers' Comm. for 9/11*, 424 F. Supp. 3d at 36. And even if they had been allowed yet another opportunity to submit or gather evidence, the evidence they suggest they would have presented sought to bolster the same flawed theories of informational and organizational standing that we reject. *See* Appellants Br. 58. The district court thus did not abuse its discretion in denying the request. *See United States v. Aguiar*, 894 F.3d 351, 355 (D.C. Cir. 2018).

For the foregoing reasons, we affirm the judgment of the district court.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*.  *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(b).

<u>**Per Curiam**</u>

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk