# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 22-5267**

**September Term, 2023**

FILED ON: OCTOBER 3, 2023

ARCHITECTS & ENGINEERS FOR 9/11 TRUTH, ET AL.,
APPELLANTS

v.

GINA RAIMONDO, IN HER OFFICIAL CAPACITY AS SECRETARY OF COMMERCE, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02365)

---

Before: WALKER and GARCIA, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

## J U D G M E N T

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the district court's order be **AFFIRMED**.

## I

On September 11, 2001, terrorists hijacked commercial airliners and flew them into the World Trade Center Twin Towers, causing them to collapse. Later that day, the nearby World Trade Center 7 building ("WTC 7") also collapsed, though it had not been struck. In 2002, pursuant to the National Construction Safety Team Act ("NCSTA"), the National Institute of Standards and Technology ("NIST") launched an investigation into the WTC 7 collapse. In November 2008, NIST released a report explaining that debris from the collapse of the North Tower ignited fires in WTC 7, generating so much heat that the structural support inside WTC 7 collapsed.

Plaintiffs—nonprofit organization Architects & Engineers for 9/11 Truth ("Architects")

and eighteen individuals—believe NIST's explanation is wrong. Based on available "scientific and witness evidence," plaintiffs instead maintain that "pre-placed explosives and/or incendiaries" caused the collapse of WTC 7. They allege that the NIST report "fails to provide a complete, coherent, and evidentially supported technical cause of the building's destruction." In 2020, plaintiffs submitted to NIST their "dispositive evidence" along with a Request for Correction of the agency's report pursuant to the Information Quality Act ("IQA") and its implementing guidelines.

NIST denied the Request for Correction in August 2020 and the administrative appeal of that denial in June 2021, prompting plaintiffs to file suit. Plaintiffs assert claims under the Administrative Procedure Act ("APA"), alleging that the denial of their Request for Correction was arbitrary and capricious, a violation of the IQA and its implementing guidelines, and otherwise not in accordance with law. They also claim that NIST violated the NCSTA by issuing a "sham report" with "irrational" analysis and conclusions.

The district court dismissed plaintiffs' suit for lack of standing, concluding that none of the plaintiffs had alleged a cognizable informational or organizational injury. Plaintiffs appealed.

## II

We review the district court's standing determination *de novo*. *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 19 (D.C. Cir. 2011). Because the district court correctly concluded that none of the plaintiffs have standing, we affirm.

## A

Plaintiffs argue that they suffered an informational injury sufficient to confer standing. They believe that the IQA and NCSTA required NIST to issue a report with "a complete, coherent, and evidentially supported technical cause of the building's destruction," not the "sham report" plaintiffs allege NIST issued instead. A plaintiff suffers a "sufficiently concrete and particularized informational injury" only if "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (internal quotation marks omitted) (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)). Because neither the IQA nor the NCSTA requires the disclosure plaintiffs allege they were denied, we need not proceed past the first prong.

The IQA does not entitle plaintiffs to the disclosure of any information—indeed, it makes no mention of required disclosure at all. Instead, it directs the Office of Management and Budget to establish guidelines for "ensuring and maximizing the quality, objectivity, utility, and integrity of information . . . disseminated by Federal agencies . . . ." 44 U.S.C. § 3516 note. We have previously held that the IQA "creates no legal rights in any third parties." *Miss. Comm'n on Env't Quality v. EPA*, 790 F.3d 138, 184 (D.C. Cir. 2015) (per curiam) (internal quotation marks omitted). Nor do the guidelines implementing the IQA create any legal entitlement to

information; instead, they establish internal standards for information quality. *See, e.g.*, Guidelines for Ensuring and Maximizing the Quality, Objectivity, Utility, and Integrity of Information Disseminated by Federal Agencies; Republication, 67 Fed. Reg. 8452, 8458 (Feb. 22, 2002). Without statutorily required disclosure, the IQA cannot provide a basis for an asserted informational injury.

The NCSTA includes two disclosure requirements but nonetheless does not support plaintiffs' alleged informational injury.

First, Section 7307 of the NCSTA requires that, after investigating building collapses that have "resulted in substantial loss of life," 15 U.S.C. § 7301(a), NIST must issue a public report with "an analysis of the likely technical cause or causes" of the collapse, *id.* § 7307(1). Section 7307 thus requires disclosure of a report—but plaintiffs concede that NIST has, in fact, issued such a report. *See* Am. Compl. ¶ 89 ("NIST was required by law to generate the NIST WTC 7 Report . . . and did so generate the NIST WTC 7 Report in November 2008.").

Plaintiffs believe the report NIST issued is scientifically inaccurate or even intentionally fraudulent. They confuse, however, NIST's obligation to issue a report that includes an analysis of the likely technical cause or causes of the building collapse with an obligation to issue a report that adopts the particular analysis plaintiffs believe is correct. An informational injury generally arises when a plaintiff is deprived of information that a statute requires the agency to disclose. *See Elec. Priv. Info. Ctr.*, 878 F.3d at 378. But plaintiffs have not been deprived of information. Rather, plaintiffs allege that they *have* the correct information, and they want a court to order NIST to re-issue a report that endorses that information.

Plaintiffs are correct that we must consider whether the statute requires disclosure based on plaintiffs' interpretation of the statute. *See Friends of Animals*, 828 F.3d at 992. "But, as with any claimed basis for standing, the plaintiff's reading of a statute for informational standing purposes must at least be plausible." *Lawyers' Comm. for 9/11 Inquiry, Inc. v. Wray*, 848 F. App'x 428, 430 (D.C. Cir. 2021) (per curiam); *see also Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 619 (D.C. Cir. 2006) (informational injury sufficiently alleged where plaintiff offered "at the least a colorable reading of the statute"); *Friends of Animals*, 828 F.3d at 992–93 (informational injury not sufficiently alleged where statutory provision could not be read to require disclosure plaintiffs sought). Here, no plausible reading of Section 7307 requires more of NIST than what plaintiffs concede NIST has already provided—a report that includes an analysis of the likely technical cause or causes of the collapse.

Second, Section 7306 of the NCSTA requires copies of the data or records underlying NIST's building collapse investigations to "be made available to the public on request," with some exceptions. 15 U.S.C. § 7306. But plaintiffs do not argue on appeal that Section 7306 provides a basis for standing and have therefore forfeited any such claim. *See Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("[T]he ordinary rules of forfeiture apply to standing.").

3

**B**

Nonprofit Architects also argues that it has standing in its organizational capacity. Organizational standing requires Architects, "like an individual plaintiff, to show actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (citation omitted). Neither of Architects's theories of organizational injury is cognizable.

Architects first attempts to repackage its otherwise incognizable informational injury as an organizational one. Architects argues that NIST's refusal to correct its WTC 7 Report deprives Architects of information it would use to further its mission: If NIST issued an accurate report, Architects would be able to help the public know the truth and potentially provide additional legal relief or remedies for 9/11 families. But, as this Court explained in rejecting an analogous argument Architects made in a prior case, these claims "are part and parcel of the alleged informational injury and thus fail with it." *See Lawyers' Comm. for 9/11 Inquiry*, 848 F. App'x at 430–31 (internal quotation marks omitted). The fact that a plaintiff seeks standing in an organizational capacity, rather than an individual one, does not render an otherwise nonexistent informational injury cognizable.

Second, Architects asserts that NIST's issuance of the allegedly fraudulent WTC 7 Report caused Architects to expend several hundred thousand dollars commissioning a study to rebut the report. This injury, too, depends upon the alleged informational injury. The alleged harm remains that NIST did not issue a report with the conclusion Architects argues the report should have contained. Where an agency is not required to disclose the information plaintiffs seek, spending resources to obtain that information does not transmute the alleged informational injury into a cognizable organizational injury-in-fact. *See Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 101 (D.C. Cir. 2019).

Even if Architects could plead a cognizable injury, any claim of organizational standing fails for lack of redressability. Architects seeks a court order to correct what it alleges is a flawed NIST report. But the court can only order that the agency comply with statutory requirements to the extent the agency has not already complied with them. *See, e.g.*, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) ("[T]he only agency action that can be compelled under the APA is action legally *required*." (emphasis in original)). As explained, NIST has issued the report required by Section 7307 of the NCSTA. A court therefore cannot redress Architects's claimed injury.

\* \* \* \* \*

For the foregoing reasons, the district court's judgment is affirmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**Per Curiam**

                           **FOR THE COURT:**
                           Mark J. Langer, Clerk

BY:  /s/
       Daniel J. Reidy
       Deputy Clerk